**Edmund J. BODINE, Jr., Plaintiff,**

v.

**FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant.**

No. 85–1814–Civ–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 28, 1992.

Order on Reconsideration April 2, 1992.

Peter W. Martin, Timothy Litchet, Martin & Bomar, Chartered, Sarasota, Fla., Mark R. Wolfe, Emmett Abdoney, P.A., Tampa, Fla., for plaintiff.

Edward F. Gerace, Kass Hodges, P.A., Tampa, Fla., for Peter Martin.

Ted R. Manry, III, James M. Martin, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for Kemper Life Ins. Companies and Amex Life Assur. Co.

Michael A. Tonelli, Barr, Murman & Tonelli, P.A., Tampa, Fla., for Attorney's Group Ins. Administrators.

Morris Weinberg, Jr., Robert W. Courtney, Tampa, Fla., Gary V. Dixon, Ross, Dixon & Masback, Washington, D.C., for John Patrick Fisher individually and on Behalf of Underwriters at Lloyds of London.

### ORDER REGARDING REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

This cause is before the Court on a report and recommendation issued by Magistrate/Judge Charles R. Wilson on November 6, 1991 and supplement to report and recommendation issued on November 26, 1991. The Court specifically referred the motion for an order determining the amount of charging lien to the assigned Magistrate/Judge. The Magistrate/Judge recommended that the motion be granted in the amount of $450,081.82, plus interest.

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had ten (10) days after service to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (en banc). Objections were filed by plaintiff on the report and recommendation and supplement to report and recommendation on November 18, 1991, and December 5, 1991, respectively.

### FACTS

On October 31, 1985, Edmund J. Bodine Jr. retained Peter W. Martin, of Martin & Stinnett, P.A. to represent him, pursuant to a written contingency fee agreement providing Martin up to 50% of any recovery, if appealed, in the prosecution of a lawsuit against Federal Kemper Life Assurance Company. During the lawsuit's pendency at trial, Mr. Bodine filed for bankruptcy in the Southern District of New York on June 5, 1986. Notwithstanding, over the course of 4 years, Martin principally conducted the

case, which involved complex and uncertain legal theories, ultimately advancing it to a successful and considerable trial judgment of $1 million. Subsequent to Federal Kemper seeking appeal of the trial court judgment, Martin agreed, in July, 1989, to renegotiate the contingency fee agreement to substitute a flat rate of 46% of any recovery for the earlier 50% ceiling. Afterwards, Martin prepared and filed written briefs and personally appeared and argued the case before the Eleventh Circuit Court of Appeals. Shortly before the Eleventh Circuit's decision reducing Bodine's recovery to $750,000.00, Bodine discharged Martin from the action and retained new counsel, which managed matters thereafter.

Martin moved to enforce an attorney's charging lien against the judgment, and this court reserved jurisdiction to determine the amount of the lien and to enforce said lien by order of December 13, 1990. Also, on April 18, 1991, at the urging of Mr. Bodine and the application of the Trustee, the United States Bankruptcy Court Southern District of New York modified the automatic stay in the related bankruptcy proceedings to permit this Court to determine issues regarding Mr. Martin's charging lien. Upon referral of the matter for a report and recommendation, Mr. Bodine persuasively convinced the Magistrate/Judge that the contingency fee agreements were merely executory contracts rendered unenforceable by reason of § 365 of the Bankruptcy Code, and that quantum meruit was the appropriate means of determining the amount of the charging lien. Thereafter, the Magistrate/Judge held a subsequent evidentiary hearing in order to assess the charging lien on a quantum meruit basis. On November 6, 1991, the Magistrate/Judge issued his report and recommendation finding 1,200 hours at $300 per hour to be reasonable in light of the circumstances involving Martin's services, and advised that a charging lien be assessed for these services on Bodine's behalf in the sum of $360,000.00. This amount equated to 48% of Bodine's gross award of $750,000.00 in the underlying action. When Federal Kemper finally satisfied the judgment with a total payment of $937,607.47, Martin sought a pro-rata share of the additional monies. On Martin's motion, the Magistrate/Judge issued a supplement to report and recommendation dated November 26, 1991, modifying the lien to include an additional $90,081.82 denoted as Martin's share of the interest received by Bodine on his recovery.

## DISCUSSION

The report and recommendation applied the lodestar standards set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and considered each element of this analysis in separate sections. Bodine asserts several points of contention with the report raised in the objections: 1) bankruptcy law guides this court's determination of the charging lien and forecloses any recovery of fees by Martin as he purportedly failed to follow bankruptcy procedures; 2) the lodestar standards of *Johnson v. Georgia Highway Express, Inc., supra,* are inapplicable to the determination of attorney's fees against an attorney's own client; 3) those hours awarded Martin in excess of 950 to 1000 are clearly excessive and lack proper supporting evidence; 4) a rate of $300 per hour is clearly excessive, with $100 to $200 per hour more accurately reflecting a standard and reasonable charge; 5) the quantum meruit award of attorney's fees equating to 48% of Bodine's recovery improperly exceeded the maximum limits of a prior contingency fee agreement of the parties; 6) addition to the charging lien of 48% pro-rata share in interest awarded to plaintiff on his recovery was erroneous; 7) several motions made prior to the hearing were improperly denied. The Court will address these objections in turn.

A. Bankruptcy law inapposite

■ As an initial matter, the Court specifically overrules plaintiff's objections contending that bankruptcy precedents bind resolution of the issues before it. In this regard, plaintiff asserts that Martin failed to apply to the bankruptcy court for permission to continue as attorney in the Federal Kemper case, and implores that bankruptcy laws operate to foreclose any recov-

ery of attorney's fees under such a circumstance. Also, plaintiff objects to the Magistrate/Judge's utilization of non-bankruptcy precedents relating to time records and determination of the lien amount. However, plaintiff fails to recognize that such matters are not the concern of this Court.

Alternatively, the concerns raised by the plaintiff focusing upon an attorney's application to represent the estate or the trustee, and the submission of detailed, contemporaneous time records in support of a fee application, refer directly to the administration of the bankruptcy estate. Section 327 of the Bankruptcy Code, and related Bankruptcy Rules, counsel that court approval is necessary to validate the trustee's or estate's employment of attorneys and other professional persons. Such approval relates to the management and preservation of the bankruptcy estate. However, the manner in which the New York bankruptcy court administers an estate or renders professional compensation is not this Court's province.

Specifically, the Bankruptcy Court involved here issued an order dated April 18, 1991, expressly modifying the automatic stay in plaintiff's bankruptcy case to allow this Court "to hear and determine any and all issues regarding the validity *as between debtor and his attorneys* of the charging liens for attorney's fees in [this matter]." [emphasis supplied]. Consequently, the Court resigns itself to determining the validity and amount of the charging lien as between plaintiff and Martin, and leaves to the Bankruptcy Court decisions relating to representation of the trustee or estate. In this regard, bankruptcy law principles do not govern the existence or amount of an attorney's charging lien for services rendered in a non-bankruptcy case. *See, e.g., Adams, George, Lee, Schulte, & Ward, P.A. v. Westinghouse Elec. Corp.*, 597 F.2d 570 (5th Cir.1979); *United States v. Transocean Air Lines, Inc.*, 356 F.2d 702 (5th Cir.1966); *In re Banks*, 94 B.R. 772 (Bankr. M.D.Fla.1989). Moreover, the Court notes that plaintiff's own efforts were instrumental in the Bankruptcy Court modifying its stay and is somewhat wary of his attempts to now cast the issues as determinable un-

der bankruptcy principles. For the foregoing reasons, the plaintiff's objections relating to the Magistrate/Judge's utilization of non-bankruptcy precedents in his report and recommendation regarding the validity of the charging lien, as it exists between plaintiff and Martin, are overruled.

## B. Lodestar applicable

■ The Court finds that the Magistrate/Judge properly relied on the standards outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and overrules the plaintiff's objection maintaining that such standards are inapplicable to this case. In objecting to the Magistrate/Judge's utilization of the lodestar analysis in *Johnson*, the plaintiff asserts that this analysis applies only to attorney's fees rendered against an opposing party, and states that "[t]here are no cases where a lodestar multiplier was applied against an attorney's own client...." The Court cannot agree with the plaintiff's contentions on this matter, as several cases exist where the *Johnson* standards are specifically applied to ascertain the amount of fees a client owes its attorney. *See, e.g., In re TLC of Lake Wales*, 13 B.R. 593 (Bankr.M.D.Fla.1981); *In re Ferkauf, Inc.*, 42 B.R. 852 (Bankr.S.D.N.Y.1984). *C.f., U.S. v. Bosurgi*, 750 F.2d 216 (2d Cir.1984) (lodestar multiplier figuring attorney lien). As noted in the Magistrate/Judge's report, the *Johnson* lodestar standards that often guide federal courts in the determination of attorney's fees are substantially similar to the analysis employed by the Florida state courts pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985). In light of the foregoing, the Court finds no error in the application of the lodestar standards set out in *Johnson* to this action and specifically overrules the plaintiff's objections on this matter.

## C. Hours and rate reasonable

■ As to the determination that 1,200 hours was a reasonable amount of time for the services provided by Martin, the Court does not find this recommendation clearly erroneous. Plaintiff objects to exceeding 950 to 1000 hours as clearly excessive and

urges the Court to modify the report. However, regarding the reasonable number of hours expended on plaintiff's underlying case, testimony ranged from a figure of 2000 to 3000 hours as propounded by Martin's expert to an estimate of 950 to 1000 hours rendered by a witness for the plaintiff. In view of this broad diversity in the testimony, and considering both the four year duration of the parties' professional relationship and the positive results obtained, the file would support the finding of 1200 hours as reasonable for Martin's services on behalf of the plaintiff.

■ Similarly, the Court finds the Magistrate/Judge's determination of $300.00 per hour as a proper and reasonable rate for Martin's services in this case to be supported by the testimony and file. Plaintiff objects to this sum as excessive, and argues that $100.00 to $200.00 per hour is a more accurate and appropriate scale. In this regard, the plaintiff emphasizes certain testimony relating to hourly rates charged by various attorneys, including Martin, in non-contingency fee cases. However, testimony in the record indicates that contingent fee risk, as well as the novel and complex nature of the issues involved, contribute significantly to the relative hourly value of a successful claim. Considering the contingency fee based character of Martin's representation and the substantial testimony regarding the unsettled nature of the issues involved in plaintiff's case, hourly-fee comparisons do not appear particularly relevant. Therefore, the Court overrules the plaintiff's objections on this point and specifically adopts the finding of $300.00 per hour to be a reasonable hourly rate for representing the plaintiff in this action.

### D. Prior agreements not cap amount

■ The Court overrules the plaintiff's objection contending that the amount awarded Martin in the report improperly exceeded a prior agreement of the parties. Plaintiff maintains that the award of attorney's fees equating to 48% of his underlying recovery inappropriately exceeded a prior agreement of the parties calling for a 46% contingency fee. In support of this contention, plaintiff cites *Florida Patient's Compensation Fund v. Rowe, supra,* and *FIGA v. R.V.M.P. Corp.,* 681 F.Supp. 806, 810 (S.D.Fla.1988), for the proposition that "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." *Rowe,* at 1151. However, the Court finds these cases to be distinguishable from the facts at hand. Both of the cited cases purport to determine the amount of attorney's fees to be taxed as costs in favor of the prevailing party in an adversarial situation. As regards the above quoted language, the court in *Rowe* explains that when taxing costs rarely will it be equitable to hold a party to the limits of his adversary's contingency fee agreement, and in no case should that agreement be exceeded. But, such is not the case in plaintiff's circumstance. This case does not involve the taxation of attorney's fees as costs against an adversary, and plaintiff was actually a party to the determination of the lien amount.

Moreover, the file indicates that plaintiff was instrumental in arguing that both of the prior contingency fee agreements, one capped at 50% and the other at 46%, were unenforceable as a matter of law. Apparently, the plaintiff now views the fruits of his earlier arguments as improvident and wishes to enjoy the benefits attending the now unenforceable contracts. The Court specifically overrules plaintiff's objections regarding this matter.

### E. Pro-rata award of interest erroneous

■ The Court does not concur with the award to Martin of a pro-rata share of the accrued interest Federal Kemper paid plaintiff in satisfaction of the judgment in this case. In his supplement to report and recommendation dated November 26, 1991, the Magistrate/Judge provided:

Martin is also entitled to a pro-rata share of interest on the difference between the sum paid by Federal Kemper in satisfaction of the judgment with accrued interest, $937,670.47, and the gross sum recovered by Bodine, $750,000.00, or $187,670.47. Martin's pro-rata share of that amount is calculated as follows:

$$\$187{,}670.47 \times .48 \frac{(360{,}000)}{(750{,}000)} = \$90{,}081.82.$$

Additionally, Martin is entitled to 48% of any interest accrued on the sums deposited with Mr. Kittay, the trustee in bankruptcy, so long as the award of interest on the sums so deposited does not interfere with the distribution rights of other creditors or the cost of administering the estate of Edmund J. Bodine, Jr. If there is any conflict this Court defers to the Bankruptcy Court to arrange an orderly and equitable distribution.

The Court finds the award of the pro-rata share noted above to be inconsistent with the factors involved in his calculation of attorney's fees in quantum meruit. Utilizing the standards of *Johnson v. Georgia Highway Express, Inc., supra*, the Magistrate/Judge essentially determined the amount of Martin's charging lien by ascertaining from the evidence a reasonable number of hours and a reasonable rate for those hours. In this case those factors happened to equate to 48% of the plaintiff's underlying award.

Nowhere does the report and recommendation purport to having ever considered a recovery based amount, but rather appears to have founded its conclusions primarily on the basis of hours and rate, with the resulting percentage of plaintiff's recovery merely being a mathematical by-product. Additionally, it should be noted that the Magistrate/Judge earlier found two of the parties' contingency fee agreements to be unenforceable. Therefore, after having determined the reasonable and appropriate amount of the attorney's fees under quantum meruit, primarily based upon hours and rate, it was error to increase this amount by a pro-rata share of accrued interest paid to plaintiff on his underlying recovery. Instead, any award of interest on the attorney's fees owing to Martin should be grounded upon the amount found due, $360,000.00, multiplied by the appropriate interest rate.

Therefore, the supplement to report and recommendation is specifically overruled to the extent that it awards Martin either a pro-rata share of any accrued interest remitted to plaintiff on his underlying recovery or a pro-rata share of any interest on amounts in possession of the trustee. In light of this determination, Martin's consent to partial reduction of award is rendered moot, and the Court will not consider it as a factor in determining the amount of the charging lien.

### F. Motions denied

The Court overrules the plaintiff's objections relating to the rulings concerning his Motion to Abate, Motion to Consolidate, and Motion for Sanctions. After reviewing the transcript of the evidentiary hearing of October 18, 1991, and separately considering the merits of each motion, the Court concurs with the Magistrate/Judge's determination, and hereby enters a denial as to each of them.

The Court has reviewed the report and recommendation as promulgated by the Magistrate/Judge and the objections, as well as making an independent review of the file. The Court concurs with, in part, and overrules, in part, the recommendations made by the Magistrate/Judge. Accordingly, it is

ORDERED that the report and recommendation, dated November 6, 1991, be adopted and incorporated by reference herein with respect to the principal amount of the charging lien and overruled with respect to the award of a pro-rata share in accrued interest on plaintiff's recovery; the objections be overruled and the plaintiff's Motion to Abate, Motion to Consolidate, and Motion for Sanctions be denied.

Done and Ordered.

## ORDER ON RECONSIDERATION

This cause is before the Court on attorney Peter W. Martin's motion for reconsideration seeking a determination of interest amounts attending the Court's Order dated January 28, 1992, awarding him an attorney's charging lien in the above styled case.

In considering attorney Martin's initial petition seeking an attorney's lien, the Court had before it the Magistrate/Judge's Supplement to Report and Recommenda-

tion dated November 26, 1991, which advised a lien amount of $360,000.00 plus interest of $90,081.82 together with a 48% share of any interest accrued on sums deposited with the trustee in bankruptcy.

On January 28, 1992, the Court adopted that portion of the Magistrate/Judge's report finding, on a quantum meruit basis, an attorney's charging lien of $360,000.00 in Martin's favor, but overruled the Magistrate/Judge's findings awarding interest based upon a pro-rata share formula. In so ordering, the Court stated "any award of interest on the attorney's fees owing to Martin should be grounded upon the amount found due, $360,000.00, multiplied by the appropriate judgment rate." However, information pertinent to this point not appearing before it, the Court proceeded to issue its order awarding the attorney's charging lien in the amount of $360,000.00 without discussion of interest.

On February 7, 1992, Martin filed with the Court a motion to reconsider its prior order and provided information pertinent to a determination of applicable interest amounts. In response, Mr. Bodine raises several points of contention to Martin's prayer.

Initially, before the Court can examine the merits of the parties' dispute over an award of interest accompanying Martin's attorney's charging lien, it is necessary to divine the procedural framework with which this cause may proceed.

■ Specifically, Martin denominated his petition to this Court as a "Motion for Reconsideration" and cited no specific rule or statute authorizing such motion. In this circumstance, it seems acceptable practice for federal courts to treat the motion as if it were made pursuant to Rule 59(e). *See, e.g., Wright v. Preferred Research, Inc.,* 891 F.2d 886 (11th Cir.1990) ("Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of a dispute."); *Dalton v. First Interstate Bank of Denver,* 863 F.2d 702 (10th Cir.1988) (motion to amend resulting in alteration of interest award treated as if made under Rule 59(e)).

In *U.S. v. Gargano,* 826 F.2d 610 (7th Cir.1987), the Seventh Circuit stated that:

A motion for reconsideration is a Rule 59(e) motion even where (as here) the motion neither cites the rule nor asks the court in so many words to alter or amend its judgment (the language of Rule 59(e)); for 'all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59.'

*Gargano,* 826 F.2d at 611 (quoting *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986)). The court then explained that by substantive motion it meant one that would substantively alter the judgment, as opposed to merely effectuating the correction of a clerical error or a grant of additional time to file.

In view of the fact that Martin's motion was made in writing and filed within 10 days of the earlier order awarding the charging lien, the Court deems it as sufficiently meeting the requirements of Rule 59(e). Therefore, this Court proceeds to the merits of the underlying interest award dispute.

■ Since this dispute over attorney's fees impacted directly upon the principal action and in the interest of judicial economy, the Court exercised ancillary jurisdiction over this cause, which cause finds its roots in the underlying diversity case. *See Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir.1977). In diversity cases issues regarding awards of prejudgment interest, including the applicable rate, are generally governed by state law. *See McDermott v. Middle East Carpet Co., Associated,* 811 F.2d 1422, 1429 (11th Cir.1987); *Royster Co. v. Union Carbide Corp.,* 737 F.2d 941, 948 (11th Cir.1984). Having relied heavily on the law of the state of Florida in determining the validity of Martin's charging lien, it seems only appropriate that the Court should once again look to that state's laws for guidance regarding an award of interest accompanying such a lien.

In the seminal case of *Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212 (Fla. 1985), the Florida Supreme Court approved use of the "loss theory" of prejudgment

interest, under which "neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest." *Id.* at 215. Instead, deprivation of the use of the money is itself considered wrongful, and an award of prejudgment interest is treated as another element of damages. Summarizing its decision, the court ruled that "when a verdict liquidates damages on a plaintiff's pecuniary out of pocket losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Id. See also Insurance Co. of North America v. Lexow,* 937 F.2d 569, 571–72 (11th Cir.1991) (discussing application of *Argonaut*). Thus, while it appears settled that Martin is able to recover prejudgment interest at the statutory rate for the period he was deprived use of the now liquidated funds, the question arises as to when that deprivation originated.

In this regard, Martin contends that prejudgment interest should commence from March 16, 1989, the date of the initial trial judgment in the underlying action. While this may be the case had Martin's fees been recovered on a contingency fee basis, the Court found the parties' contingency fee agreements unenforceable and instead awarded the attorney's fees based upon quantum meruit principles. In *Huntley v. Baya,* 136 So.2d 248 (Fla.3d DCA 1962), a Florida District Court dealt with an award of prejudgment interest attending a quantum meruit determination of attorney's fees. Explaining the applicable rule, the court stated that "if it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principal of the debt but to interest at the lawful rate from the due date thereof." *Id.* at 251 (citations omitted). Thereafter, the court affirmed the trial judge's instruction that any assessment of prejudgment interest should commence from the terminal date of the legal services rendered. *See also In re Straitz' Estate,* 147 So.2d 172 (Fla.2d DCA 1962) (interest attending award of attorney's fees commences from date of attorney's discharge).

More recently, in *Rood v. McMakin,* 538 So.2d 125 (Fla.2d DCA 1989), another Florida District Court determined that prejudgment interest on a quantum meruit recovery of fees by an attorney against his ex-associates began accruing on the date that his associates received the lump sum fees, as that was the point the contingency based funds were reduced to a specific amount. Alternatively, a Florida appellate court ruled that prejudgment interest on quantum meruit fees awarded an architect for services rendered on a project cancelled in midstream commenced from the date of the plaintiff's claim of lien. *See Jockey Club, Inc. v. Bleemer, Levine & Assoc. Architects and Designers, Inc.,* 413 So.2d 433 (Fla.3d DCA 1982). Similarly, many courts view the date of the claimant's initial demand for payment as the point that the person opposing the claim is put in default, and hold that interest commences from the initial filing of a suit, claim of lien, or demand for payment. *See, e.g., Ball v. Public Health Trust,* 491 So.2d 608 (Fla.3d DCA 1986); *Law v. Blue Lagoon–Pompano, Inc.,* 470 So.2d 33 (Fla. 4th DCA 1985).

In the present circumstance, both the facts and applicable precedent compel the Court to rule in favor of awarding interest to commence from July 17, 1990, the date of Martin's termination from the case. Such a ruling allows the award of interest to be essentially coextensive with the basis underlying Martin's attorney's charging lien. The principal amount of Martin's lien was calculated through the application of quantum meruit principles, focusing primarily upon determinations of hours reasonably expended and rate to be charged. Included within the calculation of the principal lien amount were hours determined to have been reasonably expended by Martin in certain post trial matters, such as preparing and presenting an argument before the Eleventh Circuit.

Consequently, granting interest from the date of the initial trial judgment, as suggested by Martin, would award him an interest yield pertaining to certain hours that he had not yet worked. Instead, awarding interest from the date of Mar-

tin's discharge from the case fully considers the factors underlying the quantum meruit measure of attorney's fees and best represents the date of Martin's loss.

Also, it appears immaterial to the Court that Martin may not have made a specific demand for payment on that exact date, because Bodine surely knew, in light of the significant time invested by Martin and the extremely favorable outcome obtained, that Martin would seek compensation for his efforts.

■ Next, the Court must apply the statutory rate of interest in effect at the time the interest accrued. *Argonaut*, 474 So.2d at 215. In Florida, the rate of prejudgment interest is set by the Legislature in Fla.Stat. § 687.01 (1991). According to a review of § 687.01, the statutory rate in effect from the date of the Martin's termination until the entry of judgment remained twelve per cent per annum. Therefore, in calculating the prejudgment interest owing to Martin on the $360,000.00 principal amount of his attorney's charging lien, the statutory rate of twelve per cent per annum shall be applied to the principal amount from the date of Martin's discharge from the case, July 17, 1990, until the entry of judgment regarding the attorney's charging lien on January 28, 1992. Accordingly, the Court's calculation renders prejudgment interest in the amount of $66,101.96 owing on Martin's attorney's charging lien.

■ In his motion, Martin also requests the Court to award what equates to postjudgment interest at the Florida statutory rate of twelve per cent per annum. However, awards of postjudgment interest in federal courts, even in diversity cases, are governed by 28 U.S.C. § 1961(a). *See, e.g., Lexow*, 937 F.2d at 572 n. 4; *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir.1985); *Cf. FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1533 (11th Cir.1989) (discussing conceptual differences between pre and postjudgment interest). Section 1961(a) provides a statutory basis for awards of post judgment interest to be applied to all federal district court judgments at a rate, roughly speaking, equiva-

lent to the effective coupon yield of the fifty-two week United States Treasury Bill. Consequently, the Court rules that postjudgment interest shall run from January 28, 1992, at the rate then applicable.

Notwithstanding the foregoing conclusions, nothing stated herein by the Court is intended in any way to impinge upon the Bankruptcy Court's determinations. Rather, the Court renders its rulings strictly for the purpose of complying with its charge to determine all issues relating to the attorney's charging lien in favor of Peter W. Martin. According to applicable law, prejudgment interest comprises an element of Martin's recovery, and this Court merely acts to ascertain the full measure of Martin's attorney's charging lien. If there is any conflict this Court defers to the Bankruptcy Court to arrange an orderly and equitable distribution. Accordingly, it is

Ordered that the Court's Order dated January 28, 1992, awarding an attorney's charging lien in the amount of $360,000.00 be amended to include an award of prejudgment interest in the amount of $66,101.96; and postjudgment interest on this award at the rate provided within 28 U.S.C. § 1961(a) commencing from January 28, 1992.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

CHARLES R. WILSON, United States Magistrate Judge.

THIS CAUSE has been specifically referred to the undersigned Magistrate Judge for a Report and Recommendation on the Motion For Order Determining Amount Of Charging Lien (Doc. 196) filed by the law firm of Peter W. Martin, ("Martin") plaintiff's former counsel. In a prior Order (Doc. 215), which is specifically adopted herein by this reference, this Court determined that the contingency fee agreements between Martin and plaintiff, Edmund J. Bodine, Jr. ("Bodine") are invalid and that the proper measurement of attorney's fees is one of quantum meruit. Accordingly, an evidentiary hearing was held on October 18, 1991. Having considered

the testimony given, the file, and the arguments of counsel, it is recommended that the Court assess a charging lien for Martin's services on Bodine's behalf in the sum of $360,000.00.

In determining reasonable attorney's fees, federal courts are bound by the lodestar standards set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The analysis is substantially similar to that employed by the Florida state courts pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985). The twelve factors set forth in *Johnson* which are used as guidelines to determine attorneys fee awards to the prevailing party in civil litigation shall be applied in this case. This discussion does not attempt to reduce the calculation of a reasonable fee to mathematical precision. See *Johnson* at 720.

### A.

### *The Time And Labor Required*

Since Bodine and Martin understood that they were bound by a written contingency fee agreement when Martin was retained, there are no contemporaneously kept time records. At the evidentiary hearing, Martin testified that he expended between 2,500 and 3,000 hours in representation of Bodine in this case. 2,700 hours would be a more exact estimate. Martin took 45 depositions and personally attended all but three. The case took him out of the state of Florida between 75 and 100 times. He also traveled extensively within the state on this case. Although he was assisted by an associate, he conducted all of the discovery. In support of these hours, Timothy Litchet, a former associate of Martin, testified that he alone worked about one day per month for 24 months on Bodine's case while under Martin's employ.

A.C. Shields, III, a board[1] certified civil trial lawyer, testified for Martin. According to Shields, because of the novelty of the issues and the complexity of the case, 2,000 to 3,000 hours is reasonable for representing Bodine.

Lawrence Robinson, a board certified civil trial lawyer, designated in appellate practice, testified that a reasonable estimate of the appellate portion of Martin's work would be 110 hours. Robinson estimated that it would take 16 hours to review the appellant's brief, 8 hours to review the record on appeal, 24 to 40 hours for preparation of the appellee's brief, 8 to 16 hours in preparation for oral argument and 16 hours for oral argument and the time it takes to get to Atlanta for the oral argument.

Steven Stuart, a board certified civil trial lawyer testified for Bodine. In his opinion, 950 to 1,000 hours would be reasonable for representation of Bodine in this case. This figure is based on an estimate of 100 hours for a five day trial, 200 hours in preparation for trial, 300 hours to depose and prepare to depose witnesses, 100 hours for post-trial matters, 50 hours in appellate time, with remaining hours to interview client and witnesses.

The Court finds, having considered the testimony of the aforementioned lawyers and reviewing the file and accounting records submitted by Martin, that the reasonable amount of hours for representation of Bodine is 1,200 hours. Martin's representation of Bodine continued for over four years, through both a jury verdict and appellate review. The results obtained and the records provided support 1,200 hours of work expended.

### B.

### *The Novelty And Difficulty Of The Issues Presented*

This case was unquestionably novel and difficult to litigate. Bodine sought damages for Federal Kemper's negligent failure to cancel a life insurance policy despite Federal Kemper's knowledge that the beneficiary was attempting to murder him to collect policy benefits. Since Florida law precludes recovery for emotional distress injuries caused by a defendant's negligence in the absence of physical impact to the plaintiff, causation and discernable dam-

---

1. Florida Board of Legal Specialization and Ed- ucation, an arm of the Florida Bar Association.

ages were questionable. Billy Barr, a personal injury lawyer, practicing law in Florida for over thirty years, testified that he would not have taken this case on a contingency fee basis because of its speculative nature. A.C. Shields, III also testified that because of the novelty and difficulty of the issues, he would not have undertaken representation of Bodine under any circumstances.

The Court finds that representation of Bodine involved novel and difficult issues, indicating that increased time and effort was spent handling the case.

### C.

### *The Customary Fee*

It was generally agreed by all expert witnesses at the evidentiary hearing that an attorney bills at a higher rate if a case of this nature is retained on a contingency fee basis as opposed to a billable hour basis. Additionally, several witnesses testified that it is customary to charge a higher fee for complex cases like this one.

Robinson testified that $200.00 per hour would be reasonable if Bodine was billed by the hour. He further testified that $500.00 per hour would be reasonable to represent Bodine on a contingency fee basis. However, Robinson stated that he felt few, if any, attorneys would handle Bodine's case on a contingency fee basis because of its complexity and the risks associated with failing to prevail.

Shields testified that factors contributing to Martin's fee should include: the slim chance of prevailing due to the novelty and difficulty of the issues; the lack of compensable damages; and the tremendous amount of work involved in litigating a case of this nature.

Martin testified that he charged between $250.00 and $300.00 per hour for non-contingency fee cases during the time he represented Bodine and $500.00 per hour for contingency fee cases if compensation would be based on hours expended. The Court finds, upon considering this testimony and reviewing the file, that $300.00 per hour is a reasonable hourly rate for representing Bodine in this case.

### D.

### *The Skills Requisite To Perform The Legal Service Properly*

Experienced competent counsel was necessary to effectively litigate a case of this nature. The speculative nature of the case, the complexity of the issues, and the results obtained by Martin indicate that Martin had the requisite skills necessary to adequately represent Bodine.

### E.

### *The Preclusion Of Other Employment By The Attorney Due To The Acceptance Of The Case*

Martin testified that Bodine was a very demanding client, who insisted that the trial and appeal be handled by Martin alone. Accordingly, representation of Bodine precluded Martin from accepting other employment. Martin testified that he has a propensity to handle most of his own discovery. The voluminous records and reconstructed time records support the proposition that Martin was precluded from accepting other employment.

### F.

### *Whether The Fee Is Fixed Or Contingent*

Martin contracted to represent Bodine on a contingency fee basis. Although the contingency fee contract was found to be unenforceable, the fact that the original contract was a contingency contract has weight in determination of an appropriate fee.

### G.

### *Time Limitations Imposed By The Client Or The Circumstances*

No testimony was received by the Court, or otherwise appears in the record, that there were time limitations imposed by Bodine.

## H.

### *The Amount Involved And The Result Obtained At Trial*

In view of the novelty and difficulty of the issues, and the risk associated with a speculative claim, the results obtained were extremely favorable to Bodine. The jury returned a verdict of $2,000,000.00 which was remitted to $1,000,000.00 on appeal. Since Bodine was found 25 percent comparatively negligent, the ultimate reward is $750,000.00. This amount is significant based on the facts of the case.

## I.

### *The Experience, Reputation, And Ability Of The Attorneys*

Martin has been practicing law since 1973. He has been a board certified civil trial lawyer in the state of Florida since 1983. At the evidentiary hearing, Shields and Robinson testified that Martin is an adept and seasoned trial lawyer with an excellent reputation in the community. He particularly enjoys a reputation for taking and winning difficult cases that other attorneys will not accept, like this one. Robinson and Shields testified that Martin is a tough adversary who is extremely competent at evaluating causes of action. The Court finds that the results obtained by Martin in this case are exemplary of his experience and ability.

## J.

### *The "Undesirability" Of The Case*

Throughout the evidentiary hearing, witnesses testified of the novel and complex issues involved in this case. Any case that involves thousands of hours of attorney work on a speculative claim with the risk of recovering no fee if the client does not prevail is generally considered an "undesirable" case.

## K.

### *The Nature And Length Of the Professional Relationship With The Client*

Martin's professional relationship with Bodine continued for over four years. At the evidentiary hearing, Martin testified that his social relationship with Bodine dates back to their friendship in college.

## L.

### *Awards In Similar Cases*

The Court deems this factor inapplicable since no cases have been brought to the Court's attention which were considered to be similar to the present case.

## CONCLUSION

Applying the foregoing factors, the Court finds that 1,200 hours is a reasonable amount of time for the services provided by Martin. The Court further finds that $300.00 per hour is a reasonable hourly rate taking into consideration all of the circumstances discussed above. Therefore, it is this Court's recommendation that the District Court finds that a reasonable attorney's fee for Martin's services on behalf of Bodine is $360,000.00.

Dated: November 6, 1991

NOTE: This matter was referred to the United States Magistrate pursuant to the Standing Order of this Court and Local Rule 6.01(c)(17). Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1). Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982).