In re DADDY'S MONEY
OF CLEARWATER,
INC., Debtor.

DADDY'S MONEY OF CLEARWATER,
INC., Plaintiff,

v.

Robert A. WINICK, Joel Aresty, Kelley
Drye & Warren, Defendants.

Bankruptcy No. 92–2341–8P1.
Adv. No. 92–543.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 25, 1993.

Buddy D. Ford, Tampa, FL, for plaintiff.

Victor C. Krum, Sarasota, FL, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case, and the matter under consideration is a Second Amended Complaint filed by Daddy's Money of Clearwater, Inc. (Debtor) against Robert A. Winick, Joel Aresty and Kelly Drye & Warren (Defendants). The Second Amended Complaint contains four counts: in Count I, the Debtor seeks to avoid the payment of $180,805.00 as a preferential transfer pursuant to § 547 of the Bankruptcy Code; in Count II, to avoid the same payments as a fraudulent transfer pursuant to § 548(a)(1) of the Bankruptcy Code; in Count III, to avoid the same payment as a fraudulent transfer under § 548(a)(2) of the Bankruptcy Code; and, in Count IV, to avoid the same payment as a fraudulent transfer under § 544 of the Bankruptcy Code and § 726.106(1) and (2) of the Florida Statutes. The Debtor and Defendants Aresty and Kelly, Drye & War-

ren have reached a settlement of this controversy, leaving only the claims against Winick pending. Winick has filed a motion for summary judgment, contending that there are no material issues of fact in dispute, and that he is entitled to judgment in his favor as a matter of law. The facts relevant to the resolution of this controversy as appear from the record are as follows:

Winick, a practicing attorney, was engaged by the Debtor in 1984 to represent the Debtor in a foreclosure action initiated by the Debtor against Rose Edwards (Edwards), a creditor of the Debtor. Edwards not only vigorously defended the foreclosure action but filed a counterclaim against the Debtor and sought a money judgment. It is undisputed that between 1984 and 1988, the Debtor incurred $31,-312.79 in attorneys' fees due to Winick, and as of May 10, 1988 this amount was still unpaid. On that same day, the Debtor entered into an agreement with Winick granting Winick 33% of the gross recovery from the Edwards litigation, as compensation for his past and future services (Fee Agreement).

On October 11, 1990, a judgment was entered in favor of Edwards, in her counterclaim against the Debtor in the amount of $1,080,000.00, plus costs and attorneys fees. Subsequently, on April 15, 1991, the Debtor received $475,000.00 from the liquidation of a wrap-around mortgage held by the Debtor when the underlying collateral was sold. Of the $475,000.00, $36.75 was paid at closing for recording expenses, and $10,000.00 to satisfy a judgment against the Debtor held by an Alabama company. The remaining $464,963.25 was held by Winick, in trust, earmarked for payment to other creditors of the Debtor. Included on this list of creditors who were to be paid was Winick himself. On April 16, 1991, Winick disbursed to himself $157,333.00 for professional services rendered by him to the Debtor pursuant to the Fee Agreement. On that same day, Winick disbursed $51,-675.75 to Joel Aresty representing payment of $26,675.75 for legal services performed on behalf of the Debtor, and a $25,000.00

retainer for future services to be rendered by Aresty in connection with the Edwards litigation; $3,525.00 to Martin Schweitzer for accounting services rendered; $4,442.54 to Stephen Moss, the president of the Debtor as repayment of expenses advanced by him; and on April 26, 1991, $150,000.00 to the Internal Revenue Service as partial satisfaction of Federal Corporate Income Tax. After all these disbursements, $98,472.58 remained, which was transferred into Winick's law firm trust account.

According to Winick, the remaining $98,472.58 was to be distributed among the Debtor's lawyers, $20,000.00 to Robert Burke for services rendered, $55,000.00 to Aresty as a retainer in connection with litigation against C & S Bank, and the continuing Edwards litigation, and the balance to Winick as a retainer in connection with the Edwards litigation, approximately $23,472.00. Because of service upon Winick of a writ of garnishment on April 29, 1991, actual disbursement of these amounts was delayed, but eventually was disbursed approximately two weeks later.

On February 21, 1992, Rose Edwards filed an involuntary Petition for Relief under Chapter 7 of the Bankruptcy Code against the Debtor. The Petition was based on the undisputed fact that the money judgment held by Edwards against the Debtor was never satisfied by the Debtor. On June 3, 1992, the Debtor consented to the entry of an Order to Relief and converted to a case under Chapter 11 of the Bankruptcy Code on June 8, 1992.

Based upon these facts, it is the Debtor's contention that the $180,805.00 payment to Winick was a voidable preference, or, in the alternative, a fraudulent transfer. First, the Debtor contends that Winick received the $180,805.00 payment within one year of the filing of the Bankruptcy Petition; that Winick is an insider of the Debtor; that the payments were on an antecedent debt; that the payments were made for the benefit of Winick; and that Winick, by receiving the payment, received more than he would have had he received distribution from the Debtor under a Chapter 7 case. Based on this, the Debtor contends that the payment

to Winick is a preference which can be avoided pursuant to § 547(b) of the Bankruptcy Code.

In opposition, Winick contends that, by virtue of an attorney's charging lien, the monies received from the liquidation of the mortgage receivable secured his outstanding bills; that the charging lien relates back to the date of the Fee Agreement, and therefore, at the time of the commencement of the case, he was a secured creditor and, as such, the payments to him could not enable him to receive more than he would have received under a Chapter 7 case. For this reason, according to Winick, the Debtor failed to establish this indispensable element of a voidable preference of § 547(b) and therefore, the Debtor cannot prevail. § 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is without dispute that Winick was a creditor of the Debtor, and that the $180,835.00 payment was made upon an antecedent debt. Where a creditor becomes secured by virtue of the relation back of a lien prior to the preference peri-

od, the transfer is made to a secured creditor. *In re Hagen*, 922 F.2d 742 (11th Cir. 1991). A transfer to a fully secured creditor in satisfaction of the amount of its lien during the preference period does not constitute a voidable preference. *See, Deel Rent–A–Car, Inc. v. Levine*, 721 F.2d 750 (11th Cir.1983) for the simple reason that the creditor did not receive more by the delayed payment than it would have received in a Chapter 7 liquidation case. However, the creation of a lien in favor of a previously unsecured creditor during the preference period is a transfer for purposes of § 547. 11 U.S.C. § 101(5); *In re Hagen, supra*. The determinative issue before the Court is that of whether Winick was a secured creditor of the Debtor.

 An attorney's charging lien is the right of an attorney to have the expenses and compensation due him for his services in a suit secured in the judgment, decree or award for his client. *Greenfield Villages, Inc. v. Thompson*, 44 So.2d 679 (Fla.1950); *Nichols v. Kroelinger*, 46 So.2d 722 (Fla. 1950). There is no statutory provision in Florida relative to attorney's liens, but case law has established that a charging lien arises where the attorney has recovered funds or property as a result of litigation or settlement of litigation. The lien attaches to the proceeds of the judgment or settlement, or to any funds recovered by an attorney for his client. *Randall v. Archer*, 5 Fla. 438 (1854). It is equally well established that under common law, an attorney's charging lien relates back and takes effect from the date of the creation of the attorney-client relationship. *Randall v. Archer, supra.; Matter of TLC of Lake Wales, Inc.*, 13 B.R. 593 (Bankr.M.D.Fla. 1981).

 In the voidable preference claim under consideration, the funds paid to Winick by the Debtor were not procured by recovery of a disbursement in a litigation, but from liquidation of an asset of the Debtor, i.e., the sale of the underlying collateral encumbered by a mortgage lien held by the Debtor. Although Winick may have had a charging lien which could attach to the proceeds from the Edwards litigation if he had prevailed on the litigation, this Court is satisfied that Winick did not have a charging lien on the proceeds obtained from the liquidation of the Debtor's interest in the note and mortgage. Therefore, Winick was not a secured creditor on the date of the commencement of the case, and as a result of the preferential payment received more than he would have under a Chapter 7 liquidation case.

 However, resolution of Winick's status as an unsecured creditor still leaves for consideration an issue which cannot be resolved by summary judgment. This is so because it is without dispute that the payment sought to be recovered by the Trustee was made outside of the non-insider 90-day preference period. Therefore, unless the Trustee is able to establish that Winick was in fact an insider within the term as defined by § 101(31)(B) of the Bankruptcy Code, the Trustee cannot prevail. The provisions of § 101(31)(B) are as follows:

§ 101. Definitions

(31) "insider" includes—

. . . . .

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor;

. . . . .

It is without dispute that the only definition which might possibly fit Winick would be the person in control of the debtor, under subclause (B)(iii). This in turn presents a factual issue which cannot be resolved by summary judgment.

This leaves for consideration the claims set forth in Counts II, III and IV of the Complaint, all of which are based on the contention of the Debtor that the payment to Winick was a fraudulent transfer pursuant to § 548 of the Bankruptcy Code and

Fla.Stat. § 726.106. § 548 provides, in pertinent part, as follows:

§ 548. Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

&ast; &ast; &ast; &ast; &ast; &ast;

Winick first contends that Count II should be dismissed for failure to allege an action with the intent to defraud. In reviewing Count II, the Debtor clearly alleges in this Count that the transfer of the closing proceeds to Winick was done with the intent to defraud Edwards, a judgment creditor of the Debtor. In view of this allegation, this Court is satisfied that the allegations in Count II are sufficient and the Motion to Dismiss should be denied.

This leaves for consideration Counts III and IV, upon which Winick has moved for summary judgment. In Count III, the Debtor contends that the monies received by Winick were transferred for less than equivalent value at a time when the Debtor was insolvent. This Court is satisfied that these issues contain material issues of fact, including the resolution by this Court of whether Winick's fees were reasonable, and therefore, it would be inappropriate to resolve Count III by summary judgment.

Count IV involves the same factual allegations, but is based upon § 726.103 of the Florida Statutes. Winick argues that the cause of action contained in Count IV is barred by the statute of limitations. The statute of limitations is contained in § 726.110, and provides that an action under § 726.106 must be brought within "four years after the transfer was made or the obligation was incurred." Although the obligation of the Debtor to Winick was incurred well outside the four year period, the transfer, i.e. payment of the funds to Winick, was clearly made within the four year period of time. In view of this, the action is timely and the statute of limitations does not bar this action.

For the same reasons stated above with regard to Count III, it is inappropriate to resolve Count IV by summary judgment in view of the unresolved factual issues relating to the reasonableness of Winick's fee.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Winick is denied as to Counts I, III and IV. It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss Count II filed by Winick is hereby denied, and Winick is granted fifteen days from the date of this Order to file a responsive pleading to Count II. It is further,

ORDERED, ADJUDGED AND DECREED that a pre-trial conference shall be scheduled before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on July 6, 1993 at 10:30 am to consider all counts of the Second Amended Complaint.

DONE AND ORDERED.