**In re Edmund J. BODINE, JR., Debtor.**

**No. 92 Civ. 4438 (SHS).**

United States District Court,
S.D. New York.

Dec. 28, 1995.

Mark Wolfe, Tampa, Florida, for appellant.

Jeffrey L. Zivyak, New York City, for appellee.

## OPINION AND ORDER

STEIN, District Judge.

Debtor-appellant Edmund J. Bodine, Jr. appeals pursuant to 28 U.S.C. § 158 from an order of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) granting attorney's fees to appellee Peter W. Martin pursuant to a charging lien. Bodine claims that the bankruptcy court erred by: (1) accepting the calculation by the United States District Court for the Middle District of Florida of the value of Martin's charging lien and the interest rate on it; and (2) permitting the United States Trustee to distribute the funds after a motion to stay distribution was filed. For the reasons that follow, the order of the bankruptcy court is affirmed.

### I. BACKGROUND

In October of 1985, Bodine hired Martin, an attorney, to represent Bodine on a contingency fee basis to pursue a claim against

Federal Kemper Life Assurance Company ("Kemper") for "the tort of negligent failure to cancel an insurance policy." *See Bodine v. Federal Kemper Life Assurance Co.*, 912 F.2d 1373, 1374 (11th Cir.1990), *cert. denied*, 499 U.S. 905, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991). The FBI had uncovered a plot to murder Bodine, and he claimed that one of his business partners was attempting to murder him in order to collect the benefits of a key man life insurance policy, which Kemper had issued on Bodine's life. Bodine also claimed that Kemper had actual notice of the murder plot. *Id.* Under the contingency fee arrangement, Martin was to receive 40 percent of any award if the case were settled or tried without an appeal and 50 percent of the award if the case were appealed.

While the case was pending, in June of 1986, Bodine filed for bankruptcy protection pursuant to Chapter 7 of the bankruptcy code, 11 U.S.C. § 101 *et seq.*, in the Southern District of New York. Bodine informed the United States Trustee about the existence of the tort action in Florida, but never requested that the trustee approve the contingency fee agreement as required by 11 U.S.C. § 327. In October of 1986, Bodine received a discharge from bankruptcy.

Subsequent to that discharge, Martin continued to represent Bodine in the Florida action, which was in the United States District Court for the Middle District of Florida. In April of 1989, a jury concluded that Kemper was indeed negligent in failing to cancel Bodine's insurance policy and awarded Bodine $2 million in pain and suffering, $75,000 in lost earnings and $2,000 in out-of-pocket expenses. The jury, however, also concluded that 25 percent of the damages were attributable to Bodine and the award was reduced proportionately.

Kemper appealed that award to the United States Court of Appeals for the Eleventh Circuit. *See Bodine*, 912 F.2d at 1373. Martin prepared the appellate briefs and argued the appeal, but Bodine discharged him before the court handed down its decision. *See Bodine v. Federal Kemper Life Assurance Co.*, 138 B.R. 88, 90 (M.D.Fla.1992). Shortly after Martin's discharge, the United States Court of Appeals for the Eleventh Circuit

affirmed the district court's judgment, except that it granted Kemper's request for a remittitur of the pain and suffering award on the grounds that the "maximum damages for pain and suffering which the jury could have found on the evidence in this case was $1,000,000." *Bodine*, 912 F.2d at 1378. This amount was reduced further by Bodine's comparative fault and, thus, the final award for pain and suffering was approximately $750,000.

Bodine's new counsel unsuccessfully petitioned the United States Supreme Court for a writ of certiorari and also represented Bodine on the remand to the district court. In March of 1991, Bodine and Kemper settled the case with Kemper increasing the pain and suffering award by approximately $180,-000 in exchange for Bodine waiving all interest on the judgment.

The United States Trustee utilized the final settlement sum to pay Bodine's unsecured creditors the full amount of their debt plus interest, and Bodine's estate was left with a surplus. In April of 1991, the trustee requested that the bankruptcy court modify the automatic stay provided by 11 U.S.C. § 362(a) in order the permit the United States District Court for the Middle District of Florida "to hear and determine any and all issues regarding the validity as between the debtor and his respective attorneys of the charging lien for attorney's fees ..." (Order to Modify Automatic Stay, dated April 18, 1991.) Bodine and his attorney supported the request and the bankruptcy court granted it. (*Id.*)

The district court referred the issue to a magistrate judge for a report and recommendation. The magistrate judge concluded that the contingency fee agreement between Martin and Bodine was unenforceable and that the proper measurement of the charging lien was *quantum meruit. See Bodine*, 138 B.R. at 96. Based on the evidence adduced at the subsequent evidentiary hearing to determine a reasonable fee, the magistrate judge recommended that the charging lien be calculated at $360,000 based on 1,200 billable hours at a rate of $300 per hour. In determining the proper number of billable hours, the magistrate judge considered the following ev-

idence on Martin's behalf: (1) he spent between 2,500 and 3,000 hours on the case; (2) he conducted most discovery himself, took approximately 45 depositions and traveled extensively; (3) between 2,000 and 3,000 hours would be reasonable because of the novelty and complexity of the case; and (4) 110 hours would be reasonable for Martin's appellate work. The magistrate judge also considered testimony by Bodine's expert that only 950 to 1,000 hours would be reasonable. *Id.* at 97. The magistrate judge concluded that "1200 hours is a reasonable amount of time for the services provided by Martin." *Id.* at 99.

With regard to the hourly rate for Martin's services, the magistrate judge considered testimony that: (1) an attorney charges a higher rate on a contingency fee basis than on hourly billing matters; (2) attorneys often charge more for complex cases; (3) this case was complex and difficult; (4) Martin charged between $250 and $300 per hour for non-contingency fee cases and $500 per hour for contingency fee cases; (5) $200 per hour would be reasonable on a hourly basis and $500 per hour would be reasonable on a contingency fee basis; and (6) few lawyers would take the case on a contingency fee basis because of its complexity and risk. *Id.* at 97–98. Based on this testimony, the magistrate judge concluded that $300 per hour was a reasonable fee for representing Bodine in this case. *Id.* at 98. Thus, as set forth above, the magistrate judge recommended that a reasonable fee for Bodine's service would be $360,000. Thereafter, the magistrate judge also concluded that Martin was entitled to 48 percent of the additional amounts paid by Kemper in order to settle the case as his share of the interest received by Bodine.

Bodine filed a variety of objections to the magistrate judge's report with the district court, including that bankruptcy law foreclosed any recovery of fees by Martin and that the recommended fee was excessive. The district court concluded that Bodine's argument that bankruptcy law foreclosed collection of any fees was an issue that Bodine would need to address to the bankruptcy court, that it would only determine "the va-

lidity and amount of the charging lien," that both the hours and the rate were reasonable and that Bodine's other objections lacked merit. *Bodine,* 138 B.R. at 91–92. The district court, however, rejected the magistrate judge's treatment of the interest award, finding that Martin was only entitled to interest at an "appropriate interest rate" based on the state statutory rate and that it began accruing on the date of the initial trial judgment. *Id.* at 93, 95–96. Bodine apparently never sought to appeal that decision.

On May 11, 1992, the bankruptcy court held oral argument on Martin's motion for a determination of attorney's fees. During that argument, Bodine conceded that Martin was entitled to a fee for his work in obtaining the jury verdict in Bodine's favor, but argued that the amount of the fees as determined by the district court in Florida was too high. (Tr. at 21, 30.) The bankruptcy court noted that all of Bodine's creditors had collected in full and that the only issue remaining in the bankruptcy proceeding was the distribution of the surplus in Bodine's estate. (Tr. at p. 32.) The court refused to reconsider the reasonableness of the attorney's fees previously decided in Florida. In light of the concession by Bodine that Martin was permitted to recover a fee for his services and the United States District Court proceedings in Florida, the bankruptcy court ordered that Martin be retained as special counsel for the estate *nunc pro tunc* and that Bodine's estate pay Martin the entire amount of his charging lien plus interest.

Bodine filed an appeal of the bankruptcy court's order with this Court.

## II. *STANDARD OF REVIEW*

■ This Court has jurisdiction to hear appeals from final judgments, orders and decrees of the bankruptcy courts and that court's findings of fact are not set aside "unless clearly erroneous." Fed.R.Bankr.P. 8013; 28 U.S.C. § 158(a); *In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 (2d Cir.1994); *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re PCH Assocs.,* 949 F.2d 585, 597 (2d Cir. 1991). Its conclusions of law, however, are reviewed de novo. *In re Momentum Mfg.,*

25 F.3d at 1136; *In re Ionosphere Clubs*, 922 F.2d at 988–89; *In re PCH Assocs.*, 949 F.2d at 597. On appeal, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013. In reviewing the bankruptcy court's decision, a district court need not agree with every conclusion reached and "may affirm that decision on any ground supported in the record." *In re Coronet Capital Co.*, No. 94 Civ. 1187 (LAP), 1995 WL 429494, at *2 (S.D.N.Y. July 20, 1995) (citing *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir.), *cert. denied*, ── U.S. ──, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir.1991)).

## III. *DISCUSSION*

### A. *Award of Attorney Fees*

On appeal, Bodine appears to be challenging (1) the approval of Martin's retention as special counsel *nunc pro tunc*, (2) the $360,000 award as excessive, and (3) the bankruptcy court's acceptance of the $300 hourly rate without having independently reviewed its reasonableness.

■ The United States District Court for the Middle District of Florida determined that Martin had a valid charging lien on the judgment resulting from his work. *See Bodine*, 138 B.R. at 93. Bodine had an opportunity to fully litigate the validity and value of the charging lien in that court, and was therefore precluded from relitigating in bankruptcy court "judgments rendered by courts of competent jurisdiction...." *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir.1986); *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *see also Credit Alliance Corp. v. Williams*, 851 F.2d 119, 122 (4th Cir.1988). In the bankruptcy court, Bodine could challenge neither the validity nor the amount of the charging lien; rather, he could only challenge Martin's ability to collect on it because of his failure to comply with the bankruptcy rules. Bodine, however, did not claim that the lien was uncollectible;

in fact, as noted above, he conceded that Martin was entitled to some fee for his services.

*In re 9 Stevens Cafe, Inc.*, 161 B.R. 96 (Bankr.S.D.N.Y.1993) addressed this same issue pursuant to New York law and held that an attorney was entitled to recover the amount of his charging lien even though he was never retained as special counsel. The court found that "[t]he fact that bankruptcy may have intervened between the time when the attorney commenced the action on behalf of the debtor and when the funds were received by him in satisfaction or settlement of the cause of action does not detract from the attorney's right to rely on the charging lien. The lien relates back to the initiation of the action." *Id.* at 97–98 (citing *In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr.S.D.N.Y. 1980)); *see also In re A Tarricone, Inc.*, 76 B.R. 53, 55 (Bankr.S.D.N.Y.1987) (citing, *inter alia*, *In re Heinsheimer*, 214 N.Y. 361, 367, 108 N.E. 636 (1915) (Cardozo, J.)). Since the lien is in effect at the time services begin, the bankrupt's estate takes the judgment subject to such lien. *In re 9 Stevens Cafe*, 161 B.R. at 97–98 (citing *Matter of Pacific Far East Line, Inc.*, 654 F.2d 664 (9th Cir.1981); *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298 F.2d 371 (10th Cir.1962); *In re A Tarricone*, 76 B.R. at 56; *In re PDQ Copy Center, Inc.*, 27 B.R. 123, 125 (Bankr.S.D.N.Y.1983)).

■ The enforceability of charging liens, however, is governed by state law. *See In re Hagen*, 922 F.2d 742, 744 n. 2 (11th Cir.1991); *In re Elec. Metal Prod., Inc.*, 916 F.2d 1502, 1504 (10th Cir.1990); *In re Pierce*, 809 F.2d 1356, 1359 (8th Cir.1987). Although Florida has no statutory charging lien, its common law treatment of a charging lien is no different than New York's law on its statutory lien. The lien takes "effect from the date of the creation of the attorney-client relationship and the attorney's commencement of services...." *In re Hagen*, 922 F.2d at 745; *In re Daddy's Money of Clearwater, Inc.*, 155 B.R. 788, 791 (Bankr.M.D.Fla.1993) ("It is equally well established that under common law, an attorney's charging lien relates back and takes effect from the date of the creation of the attorney-client relationship.").

Accordingly, after the validity and the amount of the charging lien were determined by the district court and Bodine conceded that Martin was entitled to recover for his services, the bankruptcy court correctly refused to revisit the district court's decision and correctly directed the trustee to pay that amount to Martin out of the judgment obtained by the estate.

### B. *State Statutory Interest Rate*

Bodine also claims that Martin was not entitled to receive interest at a rate of twelve percent on his fee award based on Florida's statutory rate because the federal treasury rate was less than ten percent during the relevant time. This issue too was fully litigated before the United States District Court in Florida and thus, for the reasons set forth above, Bodine was precluded from relitigating it in the bankruptcy court.

### C. *Motion to Stay Distribution*

Bodine's final argument is that the bankruptcy court erred by permitting the United States Trustee to release the funds to Martin after Bodine filed a motion to stay distribution. Bodine appears to be arguing that the motion for a stay itself constituted a stay. If that indeed is his argument, he is mistaken. *See, e.g., In re Best Prods. Co., Inc.,* 177 B.R. 791, 804 (S.D.N.Y.1995). Moreover, the resolution of the other issues in this appeal render Bodine's requested relief on this point—a security bond from the trustee to guarantee repayment of the fees paid to Martin—moot.

### V. *CONCLUSION*

For the reasons set forth above, the order of the bankruptcy court is affirmed. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.