In re: **HERMAN'S TOPS 'N BOTTOMS, INC.** Debtor.

**Douglass E. WENDEL, Trustee, Plaintiff,**

v.

**James L. GARBOSE, Defendant.**

**Bankruptcy No. 87–01591–BKC–TCB.**
**Adv. No. 88–0249–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

July 19, 1988.

ential transfer with respect to both payments.

Defendant has raised two affirmative defenses: (1) that the transaction falls within the exception of § 547(c)(2); and (2) that the money used for the second payment was subject to defendant's retaining lien for legal services.[1]

*Payment in Ordinary Course*

Section 547(c)(2) provides that:

"The trustee may not avoid under this section a transfer ... (2) to the extent that such transfer was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and transferee; and (C) made according to ordinary business terms."

The applicability of this exception "turns on the specific events surrounding" the debtor's payments to defendant. *In re Craig Oil Co.*, 785 F.2d 1563, 1565 (11th Cir.1986) (late payments by cashier's checks not within ordinary course or terms). We turn, therefore, to the specific circumstances of the two payments made to this debtor.

Defendant had represented the debtor for at least four years primarily in the defense of collection actions.[2] The parties had no agreement requiring continuing representation or governing the debtor's payment for those services, and the defendant, who practiced alone, maintained no regular billing pattern for any of his clients. He would bill "when he got around to it."

The two transactions at issue here were the only two billings and payments between the parties during the year.

Defendant billed the debtor on January 15, 1987 $11,420 [3] on the account. The bill

Jeffrey B. Lathe, Ackerman, Bakst, et al., P.A., W. Palm Beach, Fla., for plaintiff.

Robert C. Furr, Furr and Cohen, P.A., Boca Raton, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The trustee seeks avoidance and recovery, as preferential transfers under 11 U.S.C. § 547(b), of two payments totalling $11,000 made to the defendant attorney within 90 days before bankruptcy. Defendant has answered and the matter was tried June 28. I agree with the plaintiff that both payments are voidable and recoverable from the defendant.

The facts are not in dispute. An involuntary petition was filed against this debtor on May 11, 1987 and an Order for Relief was entered. Defendant received $2,000 from the debtor on April 10, 1987 and $9,000 on May 6 on account of antecedent debts during the interval when the debtor is presumed by § 547(f) to have been insolvent, and defendant thereby received more than he would receive from a chapter 7 liquidation.

Plaintiff has, therefore, proved each element under § 547(b) of an avoidable prefer-

---

**1.** Plaintiff has made no point of, and has therefore waived, the fact that defendant never pleaded this second defense. (CP 5). Defendant has not claimed, nor have I considered, any charging lien he may have been entitled to claim.

**2.** In defendant's words: "I basically kept the company going so he could meet the obligations and keep the business going." (Ex. 1 at 14).

**3.** I infer this amount from the fact that the next bill shows $9,420 unpaid after crediting the $2,000 payment.

included an unpaid balance of $5,317 from his August 1986 statement.

The debtor's partial payment of $2,000 was made almost three months later.

Defendant next, and finally, billed the debtor on April 16, 1987 $8,724 on the account. The bill included an unpaid balance of $9,420 which remained after the $2,000 payment was credited. (Attachment to Ex. 1).

The debtor made no payment, but defendant recovered a $9,000 rent deposit for the debtor 20 days later and immediately applied that sum to the outstanding account.

The rent deposit was recovered when the debtor closed his business and vacated the premises. Bankruptcy occurred five days later.

The only legislative history directed to this statutory exception is that:

"The purpose of this exception is to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874.

As our Circuit noted in *Craig:*

"this exception is directed primarily to ordinary trade credit transactions. These typically involve some extension of credit but are meant to be paid in full within a single billing cycle.... Because the credit extended is meant to be extremely short-term, *Congress likened payment of trade credit to payment of current expenses. Recognizing that the latter had traditionally been protected from avoidance in bankruptcy, Congress extended the same protection to trade credit through the ordinary course of business provision.*" *Id.* at 1567. (Emphasis added).

In *Kallen v. Litas,* 47 B.R. 977, 984 (N.D.Ill.1985), the district court affirmed a bankruptcy decision rejecting a § 547(c)(2) defense under facts very similar to those in this case. Within the preference period, the debtor's attorney had recovered a settlement for the debtor from a third party and had applied the recovery as payment for prepetition legal services.

■ In holding the statutory exception inapplicable, the court recognized (as our Circuit did in *Craig*) the statutory purpose to protect trade credit and said:

"The ordinary course exception contemplates normal credit transactions [citation omitted], such as the sale of goods for a business supplier on account. The relationship between the debtor and the firm did not arise in the course of such an ordinary trade credit transaction."

I find that defendant was not an ordinary trade creditor and has failed to carry his burden under § 547(g) of proving that either of the two transactions at issue here falls within the exception provided by § 547(c)(2).

*Effect of Retaining Lien*

■ Defendant does not claim that an attorney's retaining lien falls within any of the seven statutory exceptions provided by § 547(c). It does not. It becomes significant only because to establish a preference, plaintiff must prove that the creditor received more than he would receive in a chapter 7 liquidation. § 547(b)(5). Priority of payment is accorded secured creditors in chapter 7 liquidations.

It is not questioned that a retaining lien is recognized in Florida, that it attaches to all of the client's property in the attorney's possession, and that it covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney. *In re Beverly Manufacturing Corp.,* 841 F.2d 365, 368 (11th Cir.1988); *Daniel Mones, P.A. v. Smith,* 486 So.2d 559, 561 (Fla.1986).

However, defendant's lien arose on May 6, 1987 when he recovered the debtor's rent deposit. This was five days before the bankruptcy petition, well within the preference period.

 

The transfers avoidable under § 547(b) include:

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." § 101(50).

The fixing of defendant's lien on the debtor's $9,000, therefore, was an avoidable preference under § 547(b). *Deel Rent-A-Car, Inc. v. Levine*, 721 F.2d 750, 751 (11th Cir.1983). It cannot now defeat this action by the trustee to recover that preferential transfer.

As is required by B.R. 9021(a), a separate judgment will be entered for the trustee against the defendant in the amount of $11,000. Costs may be taxed on motion.