**In re Susan HAGEN, a/k/a S.D. Hagen, a/k/a Susan Dianne Hagen, Debtor.**

**Charles W. GRANT, Trustee, Plaintiff–Appellee,**

v.

**Mark Jay KAUFMAN, P.A., Defendant–Appellant.**

No. 90–3239.

United States Court of Appeals, Eleventh Circuit.

Jan. 29, 1991.

---

Lisa C. Cohen, Law Office of Lansing J. Roy, Keystone Heights, Fla., for defendant-appellant.

Ronald Bergwerk, Jacksonville, Fla., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

This appeal involves the recovery by a bankruptcy trustee of $7,500 paid to appellant 47 days before the filing of the debtor's bankruptcy petition. Appellant is an attorney who represented the debtor prior to bankruptcy in a personal injury action and was paid in accordance with a contingent fee contract. The appellee is the bankruptcy trustee who filed the action to avoid the alleged preference under 11 U.S.C. § 547, and prevailed in the bankruptcy court and on appeal to the district court. The attorney appeals the district court's judgment affirming the decision of the bankruptcy court to authorize the trustee's recovery of the payment. The bankruptcy court ruled against the trustee on two separate issues, an alleged fraudulent transfer under 11 U.S.C. § 548, and examination of a fee paid in connection with the bankruptcy case under 11 U.S.C. § 329, both relating to the same $7,500 payment. The district court affirmed. The trustee has not appealed that decision, but uses the arguments relative to those issues to assert that the only disputed element of § 547(b)(5) has been satisfied, *i.e.*, that the attorney received more than he would have received if the payment had not been made and he would have been paid by a distribution from the estate of this chapter 7 bankruptcy. The debtor entered into the contract with appellant on March 20, 1984, and the attorney claims to be a secured creditor based on a charging lien that relates back to the commencement of this representation. The bankruptcy court concluded that the fixing of the lien on the settlement proceeds, even though it relates back to the

date the contingent fee contract was entered into, was a transfer that occurred within the 90–day period preceding bankruptcy, and is, therefore, avoidable pursuant to Section 547(b). We disagree and reverse.

## FACTS

■ Susan Hagen was injured when she was hit by an automobile on March 19, 1984. She was released from the hospital the next day, and called appellant Kaufman after seeing his television commercial for legal services. Appellant went to Hagen's home on March 20, told her she could expect to recover approximately $60,000, explained the terms of the contract, and after he unbandaged her hand, she signed a 50% contingent fee contract for his services. A settlement on May 14, 1985 resulted in payment of $7,500 to appellant. The settlement was the amount covered by insurance. Appellant did not pursue a greater amount through litigation. During the period of his representation of Hagen, appellant was generally unavailable when she tried to contact him about her case. Hagen received nothing from the settlement proceeds. It was appellant who recommended that Hagen file bankruptcy to discharge the medical expenses which were not paid due to insufficient remaining proceeds of the settlement. In fact, the bankruptcy attorney was selected by appellant, and the filing fees were paid out of a portion of the settlement proceeds.[1]

Hagen filed her chapter 7 petition on July 1, 1985, and the bankruptcy trustee filed an adversary complaint to recover the fee paid to appellant under 11 U.S.C. § 547 (preference within 90 days of bankruptcy) and Section 548 (fraudulent transfer), and sought examination of the reasonableness of the fee under Section 329. The bankruptcy judge found that the payment was a preferential transfer under Section 547(b), and ruled against the trustee on the other two theories of recovery. The attorney appealed and the trustee cross-appealed to the district court, which affirmed the bankruptcy judge's decision on all three issues.

## DISCUSSION

The sole issue is whether the payment to an attorney 47 days before bankruptcy is a preference under 11 U.S.C. § 547(b), where the attorney claims a charging lien under a contingent fee contract entered into outside the 90–day preference period, and it is acknowledged as a matter of law[2] that the charging lien relates back to the commencement of the attorney's representation.

■ Appellant contends that the transfer of $7,500 in settlement proceeds 47 days prior to filing of the debtor's bankruptcy petition did not constitute a preference because the charging lien put him in the position of a secured creditor relating back prior to the 90–day period. Appellee contends that the payment satisfies all of the statutory elements of a preference[3]

---

1. Here we have facts that make lawyers squirm and members of the public scream. But we cannot twist the principle of law for the sake of righting wrongs unrelated to that principle, which is solely the recovery of a preferential payment under 11 U.S.C. § 547(b), if all statutory elements are satisfied. The asserted lack of value and "reprehensible conduct" are not relevant to the issue, nor is the asserted link to the bankruptcy filing, which was not a basis for the court's finding that the payment was a preference.

2. It is agreed that state law applies in determining the creation of a lien and the consequences and rights attributable to the lien, other than the bankruptcy statutory issues. *See Matter of Fitterer Engineering Associates, Inc.,* 27 B.R. 878, 880 (Bankr.E.D.Mich.1983).

3. Section 547(b) provides that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
      (A) on or within 90 days before the date of the filing of the petition; ... and
   (5) that enables such creditor to receive more than such creditor would receive if—
      (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
      (B) the transfer had not been made; and

including the only disputed element, that if the transfer had not been made and the appellant had received distribution from the bankruptcy estate, that payment would have been less than the $7,500 received by appellant, because the bankruptcy court would exercise its authority to determine the reasonableness of the attorney's fee paid in connection with the charging lien. Appellee assumes that the court would have reduced appellant's fee as unreasonable and excessive. Appellee's reliance on the bankruptcy court's authority to examine the reasonableness of the fee paid in connection with a charging lien cannot be considered in light of the trustee's failure to cross-appeal the adverse ruling of the district court on that issue.

■ The fundamental issue is whether appellant was a secured or unsecured creditor when the transfer was made. Appellant's argument relies on the relation back feature of an attorney's charging lien. If appellant would have received the same amount under a distribution of the estate's assets as he actually received prepetition, his position was not improved.[4] The authority for the relation back of the lien and its taking effect from the date of the creation of the attorney-client relationship and the attorney's commencement of services is the common law, as there is no statutory provision in Florida relative to attorneys' liens. *Randall v. Archer*, 5 Fla. 438 (1854); *Matter of TLC of Lake Wales, Inc.*, 13 B.R. 593, 595 (Bankr.M.D.Fla.1981); 4 *Fla. Jur.2d*, Attorneys At Law §§ 156–162. Appellant distinguishes the decision in *In re Herman's Tops 'N Bottoms, Inc.*, 88 B.R. 442 (Bankr.S.D.Fla.1988), where the lien arose five days before bankruptcy when the attorney recovered a client's rent deposit, as it pertains to a retaining lien

under Florida law, that has no relation back feature. *See In re Banks*, 94 B.R. 772, 773–74 (M.D.Fla.1989) (lien valid in bankruptcy for services and costs in connection with lawsuit from which funds were recovered).

Appellant argues that the charging lien is contractual in nature and is based upon the amount agreed upon with the client, not an amount to be determined as reasonable by the court. That issue was decided in appellant's favor when the bankruptcy court ruled against the trustee on the Section 548 and Section 329 issues, which was affirmed by the district court.

■ Appellee argues that the "more than would receive" element under Section 547(b)(5) was satisfied because the personal injury settlement was effective within the 90–day period, and the language of Section 547(e)(3) states that a transfer is not made until a debtor has acquired rights to the property transferred. Under 11 U.S.C. § 101(50),[5] the creation of a lien in favor of a previously unsecured creditor is a transfer for purposes of Section 547. A transfer to an unsecured creditor during the 90–day preference period satisfies the fifth element of Section 547(b).

■■ The bankruptcy court found that the fixing of the lien when the settlement proceeds became available, and payment made to appellant from those proceeds, was a transfer and constituted an avoidable preference. The error of the bankruptcy court was, in effect, aiming its arrow at the wrong target by analyzing *when* the transfer took place, rather than whether the appellant received, by means of the transfer, more than he would have received if the transfer had not been made and he had

(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.]. There is no dispute that four of the five statutory elements of a preference are present in this case.

4. A charging lien survives bankruptcy if the fund to which it would attach has not come into existence prior to or in the course of the bankruptcy proceeding. *Matter of TLC of Lake Wales, Inc.*, 13 B.R. 593, 595 (Bankr.M.D.Fla.

1981) (citing 4B Collier on Bankruptcy, at 1003 (14th ed.) and *In re Browy*, 527 F.2d 799 (7th Cir.1976)); *see also Matter of Fitterer Engineering Associates, Inc., supra* note 2.

5. This provision defining "transfer" under title 11, states in part:

"'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...."

received payment as a creditor in the bankruptcy case to the extent provided by the provisions of title 11 [11 U.S.C.S. §§ 101 et seq.] for distribution of the estate.[6] A transfer to a secured creditor in the amount of its lien during the preference period does not constitute an avoidable preference. *See Deel Rent–A–Car, Inc. v. Levine,* 721 F.2d 750, 756 (11th Cir.1983) (citing *Walker v. Wilkinson,* 296 F. 850 (5th Cir.1924) and *Azar v. Morgan,* 301 F.2d 78 (5th Cir.1962)). This matter is resolved by establishing when appellant achieved its secured status. The language of Section 547(e)(3) pertains to when a *transfer* is made, *not* when the creditor attained *secured* status if the lien has a relation back element. The bankruptcy court erred in not correctly applying the principle that by relation back, the appellant was a secured creditor prior to the time of the transfer and prior to the 90–day period under the statute. *Matter of Pacific Far East Line, Inc.,* 654 F.2d 664, 669–70 (9th Cir.1981). The situation where an unsecured creditor becomes secured by the creation of a lien during the preference period is not identical to the facts here. The court's erroneous conclusion does not address this distinction which is critical under Section 547(b)(5). The affirmance by the district court of the bankruptcy court's decision does not address this point.

We conclude that the law was not properly applied to the facts and, accordingly, the judgment of the district court affirming the decision of the bankruptcy court must be REVERSED. The case is remanded to vacate the judgment entered in favor of the trustee and to deny relief under 11 U.S.C. § 547(b).

REVERSED and REMANDED with directions.

JOHNSON, Circuit Judge, dissenting.

The fundamental issue in this case is whether the security interest was made within the 90–day preference period. I agree with the majority's holding that the

creation of a security agreement can be a voidable preference. If the lien was made before the start of the 90–day preference period, the majority would be correct in reversing the court below. Furthermore, the panel is correct in holding that a debtor does not make a voidable preference payment when the debtor pays a secured creditor within the preference period. The majority, however, holds that due to a state relation back provision the security interest was created before the start of the 90–day preference period and is therefore not a voidable preference. For the following reasons, I disagree.

Section 547(b) of the Bankruptcy Code requires us to void all transfers made within 90 days prior to the filing of the petition. The creation of a security interest by Ms. Hagen in favor of Attorney Kaufman was a transfer. The issue we must determine is when was this transfer made? Was it the date the attorney commenced services, i.e., the date the security interest was created and perfected? Or, was it the date the debtor obtained possession of the award from the insurance company?

Section 547(e) governs the timing, for preference purposes, when a transfer is made and when a transfer is perfected. This case presents the panel with a dispute over the former event. Section 547(e)(2) and (3) governs this dispute.

Section 547(e)(2) determines the date that the transfer was made by comparing the date of perfection and the date that the transfer took effect. It is therefore necessary first to determine when the transfer was perfected. Section 547(e)(1)(B) defines perfection as occurring "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Section 547(e)(1)(B) requires us to ask when, under state law, any creditor can obtain a lien superior to transferee-Kaufman's interest. *See Askin Marine Co. v. Conner (In re Conner),* 733 F.2d 1560, 1562 (11th Cir.1984). Florida state law is clear; the date of perfection is

---

**6.** If the bankruptcy court's view of appellant's ethics clouded the proceedings to divert its attention away from the legal point at issue, this court, in its review, has focused only on the *relevant* point. The target is the disputed statutory element, Section 547(b)(5).

March 20, 1984, when Mr. Kaufman began representing Ms. Hagen. *See Randall v. Archer*, 5 Fla. 438 (1854).

With the date of perfection in mind, we then must determine when the transfer took effect for Section 547(e)(2). The language "transfer takes effect" is not defined either in the Bankruptcy Code or in the Uniform Commercial Code. However, the language becomes clearer when we recall that at least three transfers actually occur in most secured transactions: one transfer between the debtor and the creditor creating the debt, a second one between the debtor and the creditor creating a security interest, and a third one between the debtor and the creditor paying off the debt. But Section 547 is concerned only with the second and third transfers. *See* Section 547(b)(1) ("transfers to or for the benefit of a creditor"). The dispute before this panel regards the second transfer, which created the security interest.[1]

When determining which date a security interest transferred, we have two possible dates: either the date of perfection or the date that the security interest was signed. It seems most logical that the date that the transfer takes effect is not the date of perfection. It would make little sense for Section 547(e)(2) to compare the date of perfection to the date of perfection. Therefore, under Section 547(e)(2) this panel should compare the date that the security agreement was entered into with the date of perfection. In this case, the date the security interest was entered into was March 20, 1984, the day that Ms. Hagen hired Attorney Kaufman. This date also happens to be the date of perfection under state law.

With these two dates in mind it is possible to turn to Section 547(e)(2) and determine when, for preference purposes, a transfer was made. Section 547(e)(2) divides transfers into three categories. The first category governs those transfers which are perfected "at or within ten days" of the date that the transfer "takes effect between the transferor and the transferee." 11 U.S.C.A. § 547(e)(2)(A). The second category governs those transfers which are perfected after ten days of the effective date of the transfer. 11 U.S.C.A. § 547(e)(2)(B). And, the third category governs those transfers which are never perfected. 11 U.S.C.A. § 547(e)(2)(C). It is clear that, if we ignore for the moment Section 547(e)(3), the date the transfer is made is March 20, 1984, which is outside the 90–day preference period.[2]

However, Section 547(e)(3) prohibits setting the date of transfer before the date that the debtor "has acquired rights in the property transferred." Therefore, irrespective of which date Section 547(e)(2) would ordinarily set as the date the transfer was made, the earliest the transfer could occur under Section 547(e)(3) is the date that Ms. Hagen acquired rights in the property. Under Florida law, Ms. Hagen did not acquire rights in the property until she settled with the insurance company. *See Scott v. Kirtley*, 113 Fla. 637, 152 So. 721 (1933) (holding that attorney's lien does not attach until the client has possession of the res). The settlement date was May 14, 1985, which is within the 90–day preference period.[3] Therefore, the transfer is a preference and must be voided.

I therefore dissent.

---

**1.** The third transfer clearly occurred during the preference period; however, the majority is correct in noting that "[a] transfer to a secured creditor in the amount of its lien during the preference period does not constitute an avoidable preference."

**2.** Since the date the transfer took effect was March 20, 1984, and the date of perfection was March 20, 1984, it is clear that the day of perfec-

tion was at or within ten days of the date that the debtor signed the security interest.

**3.** The majority claims that Section 547(e)(3) is inapplicable because it "pertains to when a *transfer* is made, *not* when the creditor attained *secured* status if the lien has a relation back element." (emphasis in the original). The majority is mistaken because attaining a security interest is a transfer as it concedes on page 746

of its opinion.  Since attaining a security inter-
est is a transfer, Section 547(e)(3) forbids the
use of a relation back provision for setting the
date of the transfer.