**In re DADDY'S MONEY
OF CLEARWATER,
INC., Debtor.**

**Robert M. WINICK, Appellant,**

v.

**DADDY'S MONEY OF CLEARWATER,
INC., Appellee.**

**No. 95–119–Civ–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1995.

Robert M. Winick, Sarasota, FL, Pro Se.

Buddy D. Ford, Burns, Ford & Kiesten P.A., Tampa, FL, for appellee Daddy's Money of Clearwater, Inc.

Michael R. Barnett, Michael Barnett, P.A., Tampa, FL, for appellee Stephen Moss.

## *ORDER*

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the November 23, 1994 final judgment of the United States Bankruptcy Court for the Middle District of Florida, entered by Chief Bankruptcy Judge Alexander L. Paskay. The Bankruptcy Court found that a transfer to the Appellant by the Appellee constituted a voidable preference pursuant to Section 547(b) of the Bankruptcy Code.

Jurisdiction over appeals from the final judgment, orders and decrees of the Bankruptcy Court is vested in the Federal District Courts. 28 U.S.C. Sec. 158(a).

There are three issues on appeal:

1. Whether the Bankruptcy Court erred in its finding of fact that the Appellant was an insider by relying on exhibits that were not admitted.

2. Whether the Bankruptcy Court erred in finding the Appellant an insider as a matter of law under 11 U.S.C. Section 547(b).

3. Whether the Bankruptcy Court erred in not finding that the appellant had a secured interest [charging lien], dating back to the commencement of his services, against the appellee making him a secured creditor.

## STANDARD OF APPELLATE REVIEW

■ The District Court is bound by the findings of fact made by the Bankruptcy

Court unless it determines them clearly erroneous. The burden is on the appellant to show that the Bankruptcy Court's factual findings are clearly erroneous. Federal Rules of Bankruptcy Procedure, Rule 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647 (11th Cir.1986). Appellant is entitled to an independent, de novo review of all conclusions of law and the legal significance accorded to the facts. *In re Owen*, 86 B.R. 691 (M.D.Fla.1988).

## FACTS

The Court adopts and incorporates the following findings of fact recited in the order of the Bankruptcy Court.

Appellant (Winick), a practicing attorney, was engaged by Appellee (Debtor Daddy's Money of Clearwater, Inc.; Stephen Moss is the president of the corporation) (herein "Daddy's Money") in 1984 to represent the Debtor in a foreclosure action initiated by the Debtor against Rose Edwards (Edwards), a Creditor of the Debtor in the Southern District of Florida.

At the time of his engagement, Winick was an associate, employed on a salary basis with the law firm of Fisher & Sauls, located in St. Petersburg, Florida. On May 10, 1988 the law firm of Fisher & Sauls entered into a Letter Fee Agreement (Pl's Exh. No. 1) with the Debtor for the continued representation of the Debtor in litigation against Edwards. The retention was based on 33% of the gross recovery obtained from the Edwards litigation, or, in the alternative, three times the hourly billing rate. Sometime thereafter, Winick left the law firm of Fisher & Sauls, practiced by himself, and admittedly continued to work on the Edwards litigation on behalf of the Debtor.

In late November, 1988, Winick obtained employment as an associate, employed on a salary basis, with the law firm of Ipshording, Korp & Payne, a law firm located in St. Petersburg. While in the employment of this law firm, Debtor executed a new Letter Fee Agreement (Pl's Exh. No. 2) with the law firm, pursuant to which the law firm agreed to perform legal services for the Debtor and to be compensated in accordance with the terms of a certain fee letter referred to as the May 10, 1988 fee letter, for a period commencing November 28, 1988. There is nothing in this record to indicate that either the law firm of Fisher & Sauls or Ipshording, Korp & Payne ever assigned these accounts to Winick.

Edwards filed a counterclaim against the Debtor and sought a money judgment. On October 11, 1990, a judgment was entered in favor of Edwards in her counterclaim against the Debtor in the amount of $1,080,000.00, plus costs and attorney fees. On April 15, 1991, or subsequent to the entry of the judgment in the Southern District, Debtor sold a restaurant property and received at closing $464,963.25. A day after the closing, or on April 16th, the check issued to Debtor was endorsed over to Winick who deposited the check in a trust account in the Enterprise National Bank (Pl's Exh. No. 7). This account was opened in the name of "Robert Winick, Esquire, Trust Account For DMC No. 1," and the check received at the closing was never deposited in the bank account of Debtor, or in any bank account which was controlled by Debtor.

On April 16th, 1991, Winick caused a check to be issued to himself in the amount of $157,333.00 (Pl's Exh. No. 8) for his professional services rendered to Debtor, and allegedly pursuant to a Letter Fee Agreement discussed earlier dated May 19, 1988, entered into between Fisher & Sauls, and the follow up Letter Fee Agreement with the law firm of Ipshording, Korp & Payne executed on May 16, 1989 (Pl's Exh. No. 4). The amount to Winick was calculated, according to what Winick stated in a letter to Moss, on 33% of the gross recovery.

On April 26, 1991, Winick purchased a cashier's check in the amount of $98,472.58 (Pl's Exh. No. 8), payable to himself for future professional services to be rendered to the Debtor. All these funds were disbursed out of the trust account subsequent to the entry of the adverse judgment by the Bankruptcy Court in the Southern District of Florida against the Debtor.

Counsel for Edwards sought to obtain a satisfaction of the judgment by filing an adversary proceeding in the Bankruptcy Court in the Southern District of Florida (# 92–0159), in addition to recording the judgment

in the public records in Pinellas County. (Pl's Exh. No. 3). In April, 1991, counsel for Edwards obtained a Writ of Garnishment, which was served on Winick on April 29, 1991.

It is without dispute that after the writ was served on Winick, Winick disbursed the following funds: $55,000.00 to Attorney Joel Aresty, $20,000.00 to Attorney Robert C. Burke. It appears from the Affidavit of Winick (Pl's exh. 9) that out of the monies received from the closing, he disbursed the following sums on behalf of Daddy's Money: $150,000.00 to the Internal Revenue Service as partial satisfaction of a federal corporate income tax liability; $157,333.00 to himself pursuant to the contingent fee agreement for his legal services; $51,675.75 to Attorney Joel Aresty, out of which $26,675,75 was payment for his representation of the Debtor in adversary proceeding litigation, and $25,-000.00 was payment of his fees in connection with the appeal taken from the judgment entered against the Debtor in the Edwards litigation; $3,525.00 to an accountant Martin Schweitzer for professional services rendered to the Debtor, and the sum of $4,442.54 to Stephen M. Moss, the President of the Debtor as reimbursement for advances Winick allegedly made on behalf of the Debtor in connection with the Edwards litigation.

Debtor instituted an action in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, to recover the payments made to Winick under 11 U.S.C. Section 547(b), as a voidable preference.

On November 23, 1994, the Bankruptcy Court found that the transfer to Winick on April 16, 1991 by the Debtor constituted a voidable preference pursuant to 11 U.S.C. Section 547(b) of the Bankruptcy Code.

Winick appeals to this Court, seeking a reversal of the Bankruptcy Court's judgment.

### ANALYSIS

**I. Whether the Bankruptcy court erred in its finding of fact that the Appellant was an insider by relying on exhibits that were not admitted.**

■ Appellant (Winick) asserts that the Bankruptcy Court erred when it relied on Plaintiff's Exhibits 5 and 6 in finding that Appellant was an "insider" within the meaning of 11 U.S.C. Section 101(31)(B)(iii). Plaintiff's Exhibits 5 and 6 are the affidavits of the Appellee (Moss).

The relevant part of the transcript pertaining to Plaintiff's Exhibit 5 during Stephen Moss's direct testimony follows:

Q. I'd like for you to look at Plaintiff's Exhibit No. 5 and ask you to identify this.

A. This an affidavit, motion for dismissal and partial summary judgment.

Q. This is an affidavit. Look at the end of the page or the very end of the document.

A. Okay.

Q. Was this affidavit signed by you?

A. Yes, it is.

Q. On what date?

A. The 15th day of September, 1992.

Q. Now this affidavit, you make several comments or statements in this affidavit.

A. Yes.

Q. Number 7, "At Mr. Winick's request, Enterprise National Bank of Sarasota account was closed and the $98,000 transferred into Mr. Winick's trust account." Do you have personal knowledge as to that?

A. Yes, I do.

Q. Paragraph 9, "I consented to the direction of Attorney Winick and his representations that the—

THE COURT: Whose affidavit is that?

MR. FORD: Pardon?

THE COURT: Whose affidavit is that?

MR. FORD: It's his affidavit.

THE COURT: Is that in evidence?

MR. FORD: Yes, Your Honor. I move it into evidence.

THE COURT: All right. Let's go.

MR. FORD: Okay.

(Whereupon, Plaintiff's Exhibit No. 5, after having been identified, was admitted into evidence.)

THE COURT: Don't read from papers that are not in evidence. An affidavit is not really a competent evidence. Ask him these direct questions. That's what it is. He's a *live witness.*

MR. FORD: Yes—

THE COURT: Don't do that type of thing.

Tr. 125–127.

Appellant does not identify where Plaintiff's Exhibit No. 6 appears in the transcript. However, in the Court's Findings of Fact and Conclusions of Law it refers to Plaintiff's Exhibit 6, as well as 5.

The Bankruptcy Court found that by a totality of the evidence, especially by the affidavit of Moss, the President of Debtor (Pl.Exh. # 6), and Plaintiff's Exhibit 5, that Winick had sufficient control to be an insider within the meaning of the term defined by 11 U.S.C. Section 101(31)(B)(iii). (Findings of Fact and Conclusions of Law, p. 8).

Appellant contends that neither Exhibit was admitted into evidence, and that the Findings of Fact and Conclusions of Law that rest upon them should be ignored. (Appellant's brief, p. 4).

Appellee contends that the affidavits were already part of the court record because they had been previously filed in support of Appellee's Motions for Summary Judgment, prior to the occurrence of the Final Evidentiary Hearing. (Appellee's Brief, p. 10). Appellee also asserts that the witnesses testified directly to the same information in the affidavits, and this testimony supersedes the contents of the affidavits. The Bankruptcy Court did not err in relying on the testimony of live witnesses. (Appellee's Brief, p. 10). This Court agrees.

The affidavits contained information pertaining to when the funds from the liquidation were received, as well as who opened and deposited the funds into the trust account. In addition, the affidavits establish how the funds from the liquidation were disbursed and who disbursed them. Moreover, the affidavits state what happened to the funds, and who Mr. Moss believed controlled them.

All of the information provided by the affidavits was testified to by live witness throughout the trial. More importantly, Mr. Moss was there to testify to the facts himself. (Tr. pg. 111–130). The facts contained in the affidavits were relevant and material to the issue of whether Appellant was an insider. Furthermore, the Court acknowledged that affidavits are not competent evidence and told the attorney to ask the witness questions. This shows that the Court did not rely on the affidavit, but on the live witness testimony.

In addition to the above, the record also does not reflect that the Appellant objected to any of this testimony during the hearing.

Even if the Court did rely on the affidavits, it would have been a harmless error. The record clearly establishes that all facts in the affidavit were testified to by live witnesses. The Court customarily relies upon live witness testimony in making its decisions.

This Court concludes that the affidavits were cumulative evidence because of the live testimony of witnesses. Thus, the Court did not err by relying on live testimony, and its Findings of Fact is affirmed on this basis.

## II. Whether the Bankruptcy erred in finding the Appellant an insider as a matter of law under 11 U.S.C. Section 547(b).

Section 547(b) provides in pertinent part:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. Section 547(b).

"Section 547(b) of the Bankruptcy Reform Act (the 'Code') empowers the trustee to avoid certain 'preferential' transfers of the debtor's property made before the debtor filed for bankruptcy relief. The provision was enacted to promote the Code's policy of preserving a financially distressed debtor's estate so that the debtor's assets may be fairly distributed amongst all creditors." *In re F & S Cent. Mfg. Corp.*, 53 B.R. 842, 846 (Bankr.E.D.N.Y.1985).

Section 101(31)(B) of the bankruptcy code provides in pertinent part:

" 'insider' includes—

(A) ...

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person control of the debtor ..."

11 U.S.C. Section 101(31).

"According to legislative history, an insider is 'one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.' " *In re Schuman*, 81 B.R. 583, 586 (9th Cir. BAP 1987) citing H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 312 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787.

"The tests developed by the courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor." *Id.* at 586.

"[A] transferee 'is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length.' " In *In re Lemanski*, 56 B.R. 981, 983 (Bankr.W.D.Wis.1986).

■ Determining the whether a creditor is an insider is a question of fact. *In re Taylor*, 29 B.R. 5, 6 (Bankr.W.D.Ky.1983).

■ The use of the word "includes" in the statute on insiders suggests that the statute should be applied on a case by case basis. *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 209 (5th Cir. 1983)

"Others are insiders because they 'control' the debtor. The control such persons exercise need not be legal or absolute. 2 Norton Section 32.30. A creditor who does not deal at arms length with the debtor, through which it can compel payment of its debt has sufficient control over the debtor to be deemed an insider." *In re F & S Cent. Mfg. Corp.*, 53 B.R. 842, 848 (Bankr.E.D.N.Y.1985)

In the instant case, the Bankruptcy Court concluded that Appellant Winick had sufficient control of the trust account to deem him an insider. According to the Findings of Fact and Conclusions of Law, the Court found that Winick deposited the funds from the sale of the restaurant in a trust account he set up at Enterprise National Bank. (Findings of Fact, p. 8). In addition, the Court found that the account was "totally and exclusively under the control of Winick ... and was done at the direction of Winick and all disbursements were made as a result of the decision by Winick and not by Moss. (Findings, p. 8).

Appellant contends that the court erred as a matter of law in finding him to be an insider within the meaning of Section 101(31)(B)(iii). He cites two cases to support his position. Appellant asserts that the mere fact that a creditor has 'control' over a debtor in the sense that the creditor can compel

payment of a debt has been held not to make a creditor an insider where there was no indication that the creditor and the debtor did not deal with each other at arm's length. *In re Newcomb,* 744 F.2d 621 (8th Cir.1984) (Appellant's brief pg. 6).

In *In re Newcomb,* the district court entered judgment in favor of the appellant. *Id.* at 623. An appeal of this judgment was taken and the parties agreed to put the disputed funds in an escrow account pending the outcome of he appeal. *Id.* The judgment was affirmed, and the appellee filed for bankruptcy. *Id.* at 624. The trustee filed a complaint to turn over the funds to the appellee under 11 U.S.C. Section 547(b) and won. *Id.* The appellant appealed. *Id.* The court found that the appellant was not an insider even though they could compel payment of the judgment. *Id.* at 625.

In the case at hand, there was no agreement between Appellant and Appellee about where the funds would be placed. Appellant set up the account and directed the Appellee on all issues pertaining to the funds from the liquidation. (Tr. 119, 50–52).

Appellant also cites *Gray v. Giant Wholesale Corp.,* 758 F.2d 1000, (4th Cir.1985) for a similar proposition. A creditor cannot be deemed an insider just because the creditor controls the dispensation of the checks from the debtor's checking account. *Id.* at 1003.

In *Gray,* the debtor (a store called Food Center) and creditor (Giant, an inventory supplier) made an agreement that the creditor would supply the debtor with groceries. *Id.* at 1000. The debtor and the creditor signed a security agreement that gave the creditor a security interest in the debtor's "thereafter acquired inventory . . ." *Id.* Subsequently the creditor and the debtor agreed that the creditor would take over the debtor checking accounts since the debtor could not fulfill its debt. *Id.* at 1002. While the debtor controlled the dispensation of checks, the debtor still had control over the amount of money that went into the checking account as well as, control of his business. *Id.* at 1002.

In the instant case, there was no security agreement signed between Appellant and Appellee. Furthermore, there was no agree-ment that Appellant would take over the trust account. Appellant set up the account and told Appellee to put the fund into the trust account. Finally, Appellee had no control over the account, i.e. the ability to disburse the funds or control how much went into the account (Tr. 119, 50–52, 129, 147).

Appellee contends that Appellee demonstrated by a preponderance of the evidence that Appellant was an insider of Debtor, as defined in the Bankruptcy Code. Appellee argues that there was testimony at trial that demonstrated the requisite control by Appellant to find that Appellant was an insider. Appellee argues that as matter of law there existed a "special" relationship through which Appellant, as a creditor, could control payments of its debt. At the hearing, Appellee asserts that several witness testified to the extent of control that Robert Winick had over Appellee's corporation. (Appellee's brief pg. 10–12). This Court agrees.

The record establishes that Winick opened the account in his name for Appellee, in which he was the only signatory (Tr. pg. 119), deposited the funds into the account (Tr. pg 119), and dispensed the funds to a number of creditors including himself. (Tr. 147–149) (Tr. 50–52).

Appellant contends that he did everything at the direction of Appellee. However, the record establishes that the recommendations for how the money was to be distributed came from Appellant. (Tr. 147–149).

It is this Court's determination that no arms length transaction can reasonably be deemed to have taken place for several reasons. The record does not reveal that Appellant suggested that Appellee open his own account or have someone else open the trust. More importantly, the record reveals that Appellee was in not making his own decision, but following the lead of the Appellant. Furthermore, the record reveals that Appellant, a sophisticated attorney, controlled most of the aspects of the funds received from the liquidation (Tr. 111–129).

This Court concludes from the record that Winick had a special relationship that gave him sufficient control over the debt of Moss to deem Winick an insider as a matter of law.

III. **Whether the Bankruptcy Court erred in not finding that the appellant was a secured creditor because of a charging lien dating back to the commencement of his services.**

■ Appellant contends that, even if he is an insider within the meaning of Section 547(b), the Court erred by finding that the transfer was voidable, because Appellant is a secured creditor. Appellant asserts that he had an equitable interest dating back to May 10, 1988 when the contingent fee contract was made. Appellant asserts that this contract gave him the right to a fee "equivalent to the lesser of 33% or three times his billing of the recovery of any money from the Krejci transaction." (Appellant Brief, p. 8). Furthermore, in accordance with the relation back theory pertaining to charging liens, this contract puts Appellant outside of the preference period of one year and between ninety days before the filing of a petition of bankruptcy under Section 547(b).

Appellee argues that the May 10, 1988 contingent fee agreement did not create a perfected lien to Appellant at the time the letter agreement was executed. Appellee asserts that the contingent fee agreement was not between Appellant and Appellee, but between Appellee and the firm of Fisher & Sauls, P.A. Appellee points to testimony at the final hearing of counsel from the firm, who testified that there was no assignment of this contract to Appellant, who was a mere associate with the firm. (Appellee Brief, p. 16). Appellee asserts that the fees remained property of the firm. Finally, Appellee asserts that the fee agreement was contingent upon the outcome of the Edwards litigation only. Thus, when the judgment came down against Appellee, the contingent agreement terminated. This Court agrees.

■ An attorney charging lien is the right of an attorney to have the expenses and compensation due him for his services in a suit secured in the judgment, decree or award for his client. *Greenfield Villages, Inc. v. Thompson,* 44 So.2d 679 (Fla.1950).

"The authority for the relation back of the lien and its taking effect from the date of the attorney-client relationship and the attorney's commencement of services is the common law, as there is no statutory provision in Florida relative to attorneys' liens." *In re Hagen,* 922 F.2d 742, 745 (11th Cir.1991); *Randall v. Archer,* 5 Fla. 438 (1854); *Matter of TLC of Lake Wales, Inc.,* 13 B.R. 593, 595 (Bankr.M.D.Fla.1981).

■ Florida law also makes clear that a charging lien arises out of litigation or settlement of litigation. A lien attaches to the funds recovered by an attorney for his client. *Randall v. Archer,* 5 Fla. 438 (1854).

■ The pertinent part of the contingent fee agreement states:

"In view of the foregoing, *we* believe that it should be clearly agreed between you and the Firm, and consented to by your brother and your step-mother, being the other interested parties in this matter, that in addition to reimbursement to the Firm for costs expended, our compensation shall be paid on aa basis of the lesser of (a) 33% of the gross recovery of all obligations due the entities (including but not limited to Mrs. Edwards, the Krejci, and such others as may arise) or (b) 3 times our hourly rate."

The two cases that Appellant cites to support his proposition are distinguishable in that these cases dealt with an attorney, as a sole practitioner, entering into a contingent fee agreement with his client. *In re Hagen,* 922 F.2d 742 (11th Cir.1991); see also *Olsen v. Russell,* 93 B.R. 143 (N.D.Ill.1988).

In this case, according to the record, Appellant worked for a firm, and was salaried by the firm. (Tr. 194–199). The agreement was made while Appellant was still at the firm. The record also establishes that the contingent fee agreement was never assigned to Appellant. (Tr. 22–26).

It is clearly established by the record that the funds that Appellant received were not from the Edwards litigation, but from the Krejci liquidation. (Tr. pg 161–165). However, this is of no importance because Appellant is not a secured creditor, since the contingent fee agreement was not his but belonged to the firm of Fisher & Sauls P.A.

Appellant contends that even if the transfer took place on April 16, 1991, the Findings and Judgment of the Bankruptcy Court must be reversed because the issue is controlled by *In re Hagen,* 922 F.2d 742 (11th Cir.1991).

In *Hagen,* Appellee Hagen and Appellant Attorney Kaufman entered into a contingent fee agreement upon retention of Kaufman's services on March 20, 1984. *Id.* at 744. Settlement was reached on May 14, 1985 which resulted in a payment of $7,500. *Id.* This amount was paid to the attorney. *Id.* Forty five days after settlement, Hagen filed for Chapter 7 bankruptcy. *Id.* She filed a complaint under 11 U.S.C. Section 547 preference statute to recover the fees paid to the attorney. *Id.* The bankruptcy judge found that the payment was a preference. However, the Eleventh Circuit reversed. *Id.*

The court in *Hagen* found that the bankruptcy court focused on the wrong issue when they found for the trustee. *Id.* at 745. It held that the issue was not when the transfer occurred but "whether the appellant received, by means of the transfer, more than he would have received if the transfer had not been made and he had received payment as a creditor in the bankruptcy case to the extent provided by the provisions of title 11 [11 U.S.C. Secs. 101 et seq.] for distribution of the estate." *Id.* at 745. It held that "the bankruptcy court erred in not correctly applying the principle that by relation back, the appellant was a secured creditor prior to the time of the transfer and prior to the 90–day period under the statute." *Id.* at 745.

*Hagen* is distinguishable from this case for two reasons. First, *Hagen* dealt with Section 547(b)(5) of the Bankruptcy Code, which deals with whether the creditor received more money then they would receive if they received payment "provided by the provisions of title 11 [11 U.S.C. Secs. 101 et seq.] for distribution of the estate." *Id.* at 745. Second, the contingent fee agreement was entered into by the attorney as a sole practitioner not working for a firm. Third, the attorney is not the trustee of the debtor, and there was no insider issue in that case.

This Court finds that the Bankruptcy Court did not err by not finding Appellant to be secured creditor of the debtor for the above reasons. Therefore, the transfer on April 16, 1991 did constitute a voidable preference.

## CONCLUSION

This Court has carefully reviewed the Orders of Judge Paskay, the Briefs of both parties, and other relevant documentation. Under the quoted standard of review, the Court finds that the Findings of Fact of the Bankruptcy Court are not clearly erroneous. The Bankruptcy Court's Conclusions of Law are sound. Accordingly, it is

**ORDERED** that the Orders of the Bankruptcy Court be **affirmed,** and the Clerk of the Court shall **dismiss** this Appeal.

**DONE and ORDERED.**