In re JONES & LAMSON WATERBURY
FARREL CORP., Debtor.

Martin W. HOFFMAN, Trustee, Plaintiff,

v.

UNITED STATES of America,
INTERNAL REVENUE
SERVICE, Defendant.

Bankruptcy No. 93–22303.
Adversary No. 95–2233.

United States Bankruptcy Court,
D. Connecticut.

Feb. 3, 1997.

Martin W. Hoffman, and Hank Hoffman,
Law Offices of Martin W. Hoffman, Hart-
ford, CT, for Plaintiff.

John V. Cardone, U.S. Department of Justice, Washington, DC, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

Primarily at issue in the defendant's motion for partial summary judgment is whether there is a genuine issue as to a material fact which precludes the granting of the motion. *See* Fed.R.Civ.P. 7056, making Rule 56 Fed.R.Civ.P. applicable in adversary proceedings (Summary judgment may be rendered if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law.").

#### II.

Martin W. Hoffman, the trustee (the "trustee") of the Chapter 7 estate of Jones & Lamson Waterbury Farrel Corp. (the "debtor"), on September 11, 1995, filed an adversary proceeding against the United States of America (the "defendant"), contending that transfers totaling $503,429.51 received by the defendant to satisfy the debtor's various tax liabilities constituted preferential transfers under 11 U.S.C. § 547(b).[1] The defendant's motion for partial summary judgment, filed April 15, 1996, is based on its assertion that "except for $4,246.50[2] ... the transferred property was not the property of the debtor for purposes of section 547(b)." *Defendant's*

*Opening Brief* at 6.[3] This contention is based upon the Supreme Court's ruling in *Begier v. IRS,* 496 U.S. 53, 59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990) that monies an employer holds that qualify as statutory (non-common law) "trust-fund taxes", *e.g.* income and social security taxes withheld from employees' gross wages, are not property of the employer-debtor's bankruptcy estate, whether or not the employer segregates the funds. The trustee acknowledges this principle, but states that from the materials the defendant submitted with its motion, it is not possible to determine the extent of non-trust-fund taxes included in the transfers. Such non-trust-fund taxes would include taxes payable by the debtor under 26 U.S.C. § 3111 (employer excise taxes) which normally would be considered as paid from estate property.

#### III.

The debtor, a Delaware Corporation with a principal place of business in Cheshire, Connecticut, on or about June 28, 1991, in connection with certain loan agreements, had granted a duly-perfected, first-priority security interest in essentially all of its personal property, *e.g.* inventory, equipment, intellectual property, and contracts (the "collateral"), to U.S. World Trade Corporation ("World Trade"). As of April 28, 1993, the debtor owed World Trade $5,273,650.91, and was in default under its loan agreements. World Trade, on that date, exercising its rights as a secured party, conducted a sale of the collateral to Waterbury Farrel Manufacturing Limited Partnership (the "Buyer") *See*

---

1. Section 547(b) provides:

 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made-
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if-

 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 11 U.S.C. § 547(b).

2. The defendant's Opening Brief at note 1 uses the figure of $4,630 which is more accurate as to the extent of the defendant's concession. *See* Section IV, *infra.*

3. The defendant's motion does not challenge the trustee's allegations as to any of the five subparagraphs in § 547(b), the sole argument advanced being whether the transfers came from estate property.

*Plaintiff's Attachment # 5, "Secured Party Sale Agreement."* The Buyer paid $1,400,000.00 to World Trade for the collateral. *Id.*

On February 21, 1992, April 15, 1992 and August 13, 1992, the defendant had filed three duly-perfected tax liens on the debtor's property in the respective amounts of $331,451.91, $399,062.60 and $166,144.09, for unpaid employment taxes for the three quarters ending September 30, 1991, December 31, 1991, and March 31, 1992. To enable the secured-party sale to go forward, the defendant agreed to discharge the collateral from the tax liens upon receipt of $496,773.40 from the sale proceeds, which sum the defendant received on April 29, 1993. In a letter agreement dated April 22, 1993, (the "letter agreement") drafted by Sullivan & Worcester, the debtor's attorneys, and agreed to by a representative of the Internal Revenue Service, the defendant agreed that out of the $496,773.40 payment, it would allocate $367,195.86 as payment in full of "trust fund taxes and employer taxes for the periods prior to January 1, 1993." *Defendant's Exh. 14.* The tax liens secured amounts considerably in excess of that amount, with outstanding trust-fund taxes exceeding $500,000. The defendant agreed, for that period, not to assess any responsible-officer penalties "against any person." *Id.* The defendant further agreed to accept the balance of $129,577.54 in payment of "first and second quarter [1993] trust fund taxes and employer taxes" with the money to be applied first to "trust fund taxes" and the remainder "against employer payroll taxes." [4] *Id.* The letter agreement provided that the defendant "apply $92,184.92 to the first quarter of 1993 and $37,392.62 to the second quarter of 1993." *Id.* Finally, the defendant "agreed that the balance of the proceeds of the [secured party] sale (net of cost of the sale) will go to U.S. World Trade Corporation, and the Internal Revenue Service will have no further interest in the proceeds." *Id.*

On June 10, 1993, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the debtor. The court, with the debtor's consent, entered an order for relief on September 22, 1993, and the debtor's case was simultaneously converted to one under Chapter 11. The case, on December 7, 1993, was reconverted to one under Chapter 7. The trustee's complaint to recover preferential transfers from the defendant refers to $503,429.51 [sic] as the total transfers received by the defendant because, in addition to the $496,773.40 payment, the debtor, on May 6, 1993 and August 24, 1993, had also made employment tax payments of $6,550.80 and $126.90, respectively, to the defendant for the second quarter of 1993. The parties have agreed in their memoranda that $6,292.00 of the $6,550.80 payment is not avoidable as a preference. The defendant concedes that the $126.90 payment is avoidable.

### IV.

As previously noted, *Begier v. Internal Revenue Service* ruled that employees' withheld taxes that an employer holds in trust for the government are not property of an employer-debtor's bankruptcy estate, and, consequently, "any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property...." 496 U.S. at 67, 110 S.Ct. at 2267. It follows that the employer's share of social security taxes due the defendant under 26 U.S.C. § 3111 constitutes non-trust-fund taxes. *See e.g. Brewery, Inc. v. United States,* 33 F.3d 589, 593 (6th Cir.1994) (" [T]he employer's share of FICA and Medicare taxes under 26 U.S.C. § 3111 constitutes a tax liability that is not held in trust.").

The trustee's "Statement Of Material Facts As To Which There Exists Genuine Issues To Be Tried" asserts that "it is unclear how" the defendant allocated the $496,773.40 payment "to 'trust fund' and non-'trust-fund' taxes." *Plaintiff's Statement* at 2. The trustee points to the letter agreement sentence which reads: "You [the IRS agent] have agreed that $367,195.86 will pay in full trust fund taxes *and* employer taxes for the periods prior to January 1, 1993." *Plaintiff's*

---

**4.** A taxpayer may designate application of voluntary payments to either the trust or non-trust portion of its tax liability, but in the absence of such designation, the IRS treats the payment as one representing payment of non-trust-tax liability. *Sotir v. United States,* 978 F.2d 29, 30 (1st Cir.1992) *cert. denied,* 507 U.S. 961, 113 S.Ct. 1388, 122 L.Ed.2d 762 (1993).

*Supplemental Brief* at 5 (emphasis added by plaintiff).

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion, the court "must 'resolve all ambiguities and draw all reasonable inferences in favor' of the non-moving party...." *Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 330 (2d Cir.1993) (*quoting Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). The court in deciding a summary judgment motion, " 'cannot *try* issues of fact, but can only determine whether there *are* issues of fact to be tried.' " *R.G.Group. Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962)) (emphasis in original).

 The defendant has added to its motion papers a document entitled "Summary Of Governmental Exhibits" (the "Summary") which outlines, in detail, the assessments the defendant made against the debtor for each of the pertinent five quarters for trust-fund and for non-trust-fund taxes; payments received by the defendant from the debtor prior to April 29, 1993, applied first to non-trust-fund, and then to trust-fund taxes; the balances thereby remaining; and the defendant's application of the $496,773.40 payment to the five quarters. The Summary reveals that for the three quarters prior to January 1, 1993, the defendant applied $352,816 to trust-fund taxes and $14,378 to non-trust-fund taxes. Specifically, for the quarter ending December 31, 1991, the Summary shows the defendant applied $273,257 to that quarter's tax obligations, where the trust-fund taxes outstanding amounted to $258,879 and $72,184 was due for non-trust-fund taxes.

For the quarter ending March 31, 1993, the defendant applied $92,184.92 to trust-fund taxes. For the 1993 second quarter, the defendant applied $33,146 to trust-fund taxes and $4,246 to non-trust-fund taxes.

The trustee contends that "the Defendant's exhibits are incomplete" and that "it is possible that there may have been more non-trust fund taxes due and owing at the time of the $496,773 payment." *Plaintiff's Supplemental Brief* at 5. He insists that genuine issues of material fact remain.

The defendant conceded in its motion that the $4,246 allocation in the 1993 second quarter was preferential. As to the $14,378 non-trust-fund tax allocation for the 1991 fourth quarter, the defendant seemingly argues that since it could have applied such sum to remaining unpaid trust-fund taxes in the other two pre–1993 quarters, the court should conclude that is what the letter agreement intended—namely, that the debtor's principals would want trust-fund obligations paid ahead of the non-trust-fund obligations.

Based upon the materials submitted by the defendant, and the lack of any countervailing material from the trustee, the court concludes there is no genuine issue as to the allocation of the $496,773.40 payment. "If no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless and the movant therefore is entitled to a judgment as a matter of law." 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil* 2d, ¶ 2727 at 130 (1983); *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...."). The court concludes that the defendant is entitled to summary judgment on all the transfers except for $19,009.70. This amount comprises $4,246 and $126.90 conceded by the defendant as received for non-trust-fund-tax obligations for the second quarter of 1993, $14,378 determined by the court to have been allocated by the defendant to non-trust-fund-tax obligations for the fourth quarter of 1992, and $258.80 agreed to

by the parties as a preferential payment for the second quarter of 1993.

## V.

The trustee makes a further argument that the $496,773.40 payment was not voluntary in the sense that *Begier v. IRS* stated that "voluntary" prepetition payments of trust-fund taxes are not transfers of the debtor's property. The trustee's contention rests on the conceded fact that the payment to the defendant was made in return for the release of the federal tax liens the defendant filed against the collateral World Trade conveyed to the Buyer. This argument confounds the court since neither the trustee nor the defendant have questioned whether the funds received by the defendant came from the debtor.

According to the uncontroverted background recited in section III *supra,* the circumstances surrounding the sale indicate that none of the monies received by the defendant would have come from the debtor. The funds transferred to the defendant were apparently proceeds of the sale received by World Trade as the secured party selling the collateral and the party first entitled to the proceeds of sale towards satisfaction of the indebtedness secured by its security interest. *See* Conn. Gen.Stat. § 42a–9–504. Voluntariness thus is irrelevant. In addition, World Trade's sale of the collateral, as a secured creditor, cannot give rise to a claim of preference. *See* 5 *Collier on Bankruptcy* ¶ 547.03[1][a] at 547–18 (15th ed. rev'd 1996); *In re Hagen,* 922 F.2d 742, 746 (11th Cir. 1991) (transfer to secured creditor in amount of lien during preference period does not constitute preference).

The parties may very well have sufficient reasons why they have asked the court to resolve the defendant's motion only on application of the trust/non-trust tax doctrine. In any event, the trustee's argument on voluntariness fails. *See Muntwyler v. United States,* 703 F.2d 1030, 1032–3 (7th Cir.1983) (quoting *Amos v. Commissioner of Internal Revenue,* 47 T.C. 65, 69, 1966 WL 1102 (1966)) ("An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."). There were no distraint, levy or other legal proceedings in the present matter.

## VI.

### CONCLUSION

The defendant's motion for partial summary judgment is granted to the extent that a partial judgment may enter in which $484,-441.40 is determined to be the amount of transfers received by the defendant that is not avoidable as preferential under § 547(b) because this amount does not constitute a transfer of the debtor's property. It is

SO ORDERED.